THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MATTHEW J. MARCISZ, Defendant-Appellant.

(No. 74-90; ▮▮▮▮▮)

Third District—September 22, 1975.

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (William R. Ford, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant, Matthew J. Marcisz, was found guilty of contempt for violating an injunction entered in a divorce proceeding in the Circuit Court of Will County and was sentenced to six months' imprisonment at the Illinois State Penal Farm. Defendant contends on appeal that his conviction should be reversed because the contempt proceedings were criminal in nature and did not conform to minimal constitutional standards required for criminal prosecutions. The People of the State of Illinois, substituted as appellee in this case, contend that the conviction should be affirmed since the contempt was civil. In addition, the State's attorney has filed a motion to withdraw on the grounds that the People are not a proper party to a civil action.

On July 16, 1973, pursuant to a decree of divorce, defendant was enjoined from interfering with his ex-wife's occupancy of the home in which she resided. Subsequently Patricia Marcisz filed a petition for a rule to show cause alleging that the defendant had violated the injunction by entering her home without her permission. At the contempt hearing, Patricia Marcisz testified that the defendant had twice entered her home. The first entry was accomplished by forcibly breaking down the door, and Patricia Marcisz had to summon the police and have defendant removed. Defendant again forcibly entered her home two days later, at which time he destroyed a television and stereo, broke the windows,

470

and scuffled with his ex-wife before being removed by police officers. At the hearing, defendant requested and was denied the assistance of counsel and was called upon to testify under section 60 of the Civil Practice Act.

■■ The central issue presented is the difficult question of whether the contempt was criminal or civil.

Criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the authority of the court. Civil contempt ordinarily consists of failing to do something ordered to be done by a court in a civil action for the benefit of an opposing litigant, and proceedings are instituted to compel or coerce obedience to the order or decree. *People ex rel. Kazubowski v. Ray*, 48 Ill.2d 413, 272 N.E.2d 225 (1971); *People ex rel. Chicago Bar Association v. Barasch*, 21 Ill.2d 407, 173 N.E.2d 417 (1961). This distinction is exceedingly difficult to apply, because a contemptuous act may exhibit characteristics of both types of contempt. Therefore, courts must make a careful analysis, taking into consideration the nature of the act to be punished and the nature and purpose of the punishment.

■■ Generally, civil contempt proceedings are prospective in nature and are usually instituted where a party has failed to perform an affirmative act which that party had been ordered to do for the benefit of an opposing party. In effect, a civil contempt proceeding is but a continuation of the original proceeding which resulted in the order or decree. The court seeks to compel obedience to its order or decree by punishment which the contemnor can avoid by compliance with the order or by punishment imposed until there is compliance. Criminal contempt, which usually involves a more direct disrespect of the court's authority, is instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct. It has been said that civil contempt consists in refusing to do what had been ordered, whereas criminal contempt consists in doing what had been prohibited. *Shillitani v. United States*, 384 U.S. 364, 16 L.Ed.2d 622, 86 S.Ct. 1531 (1966).

In discussing the nature and purpose of punishment for contempt, our supreme court has said in *Barasch:*

"These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citation.] A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and * * * 'he [the contemnor] carries the key of his prison in his own pocket.'" (21 Ill.2d 409, 410.)

See also 12 Ill. L.&Pr. *Contempt* § 103 (1955).

In difficult cases, such as the one before us, these principles are not subject to easy application. As was said before, contempt is sui generis, and may partake of the characteristics of both. Also, we note that the logic of determining whether a contemptuous act is civil or criminal, and hence what punishment is appropriate, by looking at the punishment actually imposed is open to doubt. However, since important constitutional protections attach to a criminal contemnor, the distinction must be made.

Cases following *Barasch* provide some illustration of these principles. In *Sullivan v. Sullivan*, 16 Ill.App.3d 549, 306 N.E.2d 604 (1st Dist. 1973), the defendant was imprisoned for a definite term for failure to pay alimony. The court noted that the purpose of the contempt proceeding was to coerce the defendant to pay alimony in accordance with the order in the divorce proceeding. The court then reversed the sentence as inappropriate and held that, in order to be coercive, a proper punishment should contain conditions for payment which, if satisfied, would affect the defendant's release.

However, in *American Cyanamid Co. v. Rogers*, 21 Ill.App.3d 152, 314 N.E.2d 679 (4th Dist. 1974), where a judgment debtor was jailed for a definite term for wilful refusal to pay the debt, the court classified the contempt as criminal. The court there noted that, although the defendant had wilfully refused to pay a few months previously, at the time of the contempt proceeding the defendant was bankrupt. Therefore, as it was impossible to coerce payment from the defendant, and as there was nothing the defendant could do to purge himself of this contempt, the contempt proceeding was obviously intended to punish the defendant for his past contumacious act.

■■ In other cases where the proceedings and resulting punishment were found to be coercive, the contempt has been construed as civil. (*County of Cook v. Lloyd A. Fry Roofing Co.*, 13 Ill.App.3d 244, 300 N.E.2d 830 (1st Dist. 1973) (imposition of a per diem fine in order to force the defendant to comply with court-ordered pollution standards); *City of Park City v. Brosten*, 24 Ill.App.3d 442, 321 N.E.2d 15 (2d Dist. 1974) (imprisonment of the contemnor until he agreed to take affirmative steps in regard to the court-ordered removal of junk from his property).

However, where the proceeding and punishment indicated a punitive rather than a coercive purpose, the contempt has been construed as criminal. In both *Board of Junior College District No. 508 v. Cook County College Teachers Union*, 126 Ill.App.2d 418, 262 N.E.2d 125 (1st Dist. 1970), *cert. denied*, 402 U.S. 998 (1971), and *County of*

*McLean v. Kickapoo Creek, Inc.,* 51 Ill.2d 353, 282 N.E.2d 720 (1972), defendants were imprisoned for a definite term for violating a prohibitory injunction. In neither case was there a coercive order issued for the benefit of an opposing party, and both courts noted that the conduct was direct interference with the authority of the court.

The State argues that since a private party brought this contempt action in order to obtain the benefits and protection to which she is entitled under the injunction, the contempt proceeding should be regarded as civil. However, the cases cited indicate that the test for determining what type of contempt is involved is not whether benefits will inure to a private party, but whether the contempt proceeding, in the totality of circumstances, is coercive or punitive. In *Eberle v. Greene,* 71 Ill.App.2d 85, 93, 217 N.E.2d 6 (3rd Dist. 1966), this court said:

> "Then enforcement of a court's decree by civil contempt is not the enforcement of a private right but rather the process of the court to secure obedience to its decrees, the benefit to the party invoking the aid of the court being merely incidental."

In the typical contempt action arising out of a divorce case, the purpose of the contempt order is to obtain payment of support money or coerce the defendant to comply with some other provision of the decree. Such contempt actions have always been characterized as civil in nature.

The facts of this case place it in a different category than those cases. Here the record shows that the defendant had repeatedly ignored orders of the court to pay support and attorneys fees when he was able to make such payment and had taken and refused to return his wife's furniture. In court, he refused to conduct himself in a proper manner and had to be restrained at the original divorce proceeding. While these actions were not the subject of the present contempt proceeding, they indicate a continuing disrespect for the court's authority. The act which was the primary basis for this contempt proceeding consisted of two forcible entries and a violent destruction of his wife's property. Prior to sentencing, the judge stated that he deemed it best "* * * to take you out of circulation * * * for the good of your wife and certainly for the good of society." The trial court's order does not contain a statement of what the defendant could do (if anything) to purge himself of this contempt and be released. Instead, the order imposes a definite term of imprisonment for a past contumacious act.

Although defendant's imprisonment is undoubtedly of benefit to Patricia Marcisz, the surrounding circumstances in this case, the nature of defendant's conduct and the type of punishment imposed lend themselves much more readily to a punitive, rather than a coercive, analysis.

Indeed, it is difficult to conceive how a consummated act of violating an expressly prohibitory injunction could be dealt with in a coercive manner.

■■■ Accordingly, we hold that defendant's contempt was criminal, and that defendant was entitled to certain constitutional protections. Among these are the right to notice, a reasonable opportunity to defend, the assistance of counsel (*In re Oliver*, 333 U.S. 257, 92 L.Ed. 682, 68 S.Ct. 499 (1948); *People v. Skar*, 30 Ill.2d 491, 198 N.E.2d 101 (1964)), and the right to be proven guilty beyond a reasonable doubt and not be compelled to testify against himself (*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 55 L.Ed. 797, 31 S.Ct. 492 (1911); *People v. Spain*, 307 Ill. 283, 138 N.E. 614 (1923); *People ex rel. Chicago Bar Association v. Barasch*, 21 Ill.2d 407, 173 N.E.2d 417 (1961).

■■ The record shows that defendant's request, prior to the contempt hearing, that he be allowed to secure legal representation was denied by the trial judge. In addition, defendant was called to testify under section 60 of the Civil Practice Act, in violation of his right not to incriminate himself. Both rulings were erroneous.

■■ We recognize the difficulties faced by a trial court in determining what sort of contempt is involved. However, by the time the trial judge determined that the most appropriate punishment for defendant was a determinate jail sentence, he, in effect, had decided that the contempt was criminal. It was imperative, therefore, that defendant be given the constitutional rights to which he was entitled. While we do not in any way think that the punishment was unjust or inappropriate, we are compelled to hold that defendant was denied those constitutional rights.

This court will not attempt to formulate a procedure for trial courts to use for determining what type of contempt is involved. The determination will necessarily depend on differing considerations to be made in individual cases. Moreover, it may well be that only a few cases will be difficult to classify. A possible solution appears in *Kay v. Kay*, 22 Ill.App.3d 530, 318 N.E.2d 9 (1st Dist. 1974), where the trial court conducted a preliminary-type hearing in a situation where the conduct complained of presented some difficulty in classification.

■■ The final contention concerns the claim by the State that the People are not a proper party to this action. It is relatively clear that a criminal contempt action need not be initially prosecuted by the People. (*People v. Goss*, 10 Ill.2d 533, 546, 141 N.E.2d 385 (1957).) Indirect criminal contempt proceedings may be prosecuted by the People, by an amicus curiae or, as in this case, a private litigant. A much more troublesome question concerns the role of the People at the appellate level.

The State argues that substituting the People as appellee in contempt proceedings of this sort imposes an impractical increase in the State's duties.

■■■ Although this issue would be appropriate for resolution by our supreme court or the legislature, apparently they have not yet been faced with the problem. We have found no definitive requirement that the State represent the appellee in an appeal of this nature, and we think that the decision regarding the substitution of the State is best left to the discretion of the court. In some instances the original prosecuting party, whether a private party or amicus curiae, could undoubtedly represent the appellee. However, in those situations where the original party is unable to continue the prosecution, the State would seem to be the logical candidate to represent those interests. A proceeding of this sort is not merely a continuation of a divorce proceeding, as is, for example, a civil contempt proceeding to compel the payment of alimony. This is an indirect criminal contempt proceeding, which is concerned with the vindication of a court's authority and the punishment of those who choose to disobey and interfere with that authority. Moreover, in cases where the original party is unable to continue the appeal, given the quasi-criminal aspects and consequences of an indirect criminal contempt proceeding, substitution of the State would seem consistent with section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1973, ch. 14, § 5). We believe this is an appropriate case for appointment of the People as substitute appellee, and we therefore deny the motion to withdraw.

As the record shows that defendant was deprived of his constitutional right to the assistance of counsel and his right not to incriminate himself, this case is reversed and remanded for a new hearing.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.