ARTHUR BLANKENSHIP, Plaintiff-Appellant, *v.* LINDA BLANKENSHIP, n/k/a Linda Chapman, Defendant-Appellee.

Fourth District   No. 14814

Opinion filed September 15, 1978.

CRAVEN, J., dissenting.

Costigan & Wollrab, of Bloomington, for appellant.

James Zachry, of Burger, Fombelle, Wheeler & Dvorak, of Decatur, for appellee.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Plaintiff Arthur Blankenship appeals from an order of the circuit court of DeWitt County (1) finding him in contempt of court for violation of a court order with regard to the custody of his minor son Kenneth, (2) sentencing him to 30 days in jail as punishment for the contempt, (3) ordering him to pay $300 as partial attorneys' fees for his divorced wife, defendant Linda Blankenship Chapman, and (4) dismissing for want of equity his petition for change of custody.

Plaintiff had been granted a divorce from defendant on September 14, 1971. Kenneth, their only child and then 10 years old, was placed in their joint custody. Various proceedings took place concerning custody and support payments. On February 19, 1975, the court order as to custody was further modified to provide that the defendant had custody of Kenneth subject to reasonable visitation by the plaintiff (1) during the

school year and (2) for the entire first half of the summer school vacation. Defendant was to have reasonable visitation with Kenneth while he was visiting plaintiff in the summer. That order remained in force at all subsequent times pertinent.

On June 18, 1977, Kenneth went to Minnesota to visit plaintiff and plaintiff's wife and family. Shortly after he arrived, he went with them to Missouri when they moved to a farm near Buffalo in that State. Kenneth had not returned to his mother's home in Clinton by August 31, 1977, at which time she filed a petition seeking a rule on plaintiff to show cause why he should not be held in contempt and asking for attorneys' fees. Hearing on the petition was not held until January 13, 1978, subsequent to which the order appealed was entered on February 2, 1978.

At the hearing, plaintiff testified that he had talked with Kenneth several times about Kenneth's returning to his mother and that Kenneth told him that he was unhappy with his mother, preferred to be with his father, refused to go back, and said that he would run away if forced to do so.

Plaintiff argues that he was not in contempt because (1) he did nothing to encourage Kenneth not to return, (2) he took no affirmative step to prevent Kenneth from doing so, and (3) he was not required to force Kenneth to return or even to encourage him to do so in view of the boy's stated frame of mind and the dire consequences that would likely result. Defendant contends that if we overturn the contempt finding, the precedent will permit a noncustodial parent who has children with him during periods of visitation to extend the periods of visitation and harass the custodial parent by taking no affirmative action to return the child when the child expresses displeasure at returning. We do not address these questions because we conclude that questions of procedure are dispositive of the contempt issue.

■■ One method of classifying contempt proceedings is upon the basis of whether they are civil or criminal in nature. Those which are civil are instituted to coerce obedience to a court order. Those which are criminal are instituted to vindicate the authority of the court. Recent definitive explanations of the difference between these types of proceedings as applied to the enforcement of orders in matrimonial cases are contained in the opinions of the appellate court in *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737, and of the supreme court affirming that portion of the decision that is material here and reversing the other part (*Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 357 N.E.2d 477). Those opinions point out that although it is not always easy to determine which type of relief a contempt petition requests, if the vindication of the court's authority is sought, the respondent is entitled to the following constitutional protections enjoyed by an accused in criminal cases: (1) notice, (2) reasonable opportunity to defend, (3) assistance of counsel, (4)

a reasonable doubt standard of proof, and (5) the privilege against self-incrimination. See also *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417.

■■ The *Marcisz* opinion also explains that in criminal contempt proceedings, the court may impose a punishment which the respondent must undergo regardless of whether he later complies with the order, but in civil proceedings the order imposing the sanction must provide that the sanction abate if the respondent purges himself by compliance. Here the unconditional imprisonment imposed upon plaintiff was a criminal sanction. Although the petition of defendant upon which the contempt finding was entered asked that a rule be entered upon plaintiff to show cause why he should not be held in contempt of court for refusing and neglecting to comply with the court's previous order, the petition did not allege that plaintiff had willfully and contumaciously refused to return Kenneth to defendant. Rather the petition merely alleged that plaintiff had taken the boy from the State. The petition was heard together with a petition to modify the custody order. The plaintiff (who was respondent to the contempt petition) was called to testify by defendant pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). These procedures would have been impossible in a criminal contempt proceeding. We conclude that the proceeding was civil in nature and not criminal and that the court erred in imposing the incarceration regardless of whether plaintiff had been in contempt.

■■ As Kenneth had been delivered into court at the time of the hearing, plaintiff was not in civil contempt of court regardless of the validity of his reasons for not doing so sooner.

The new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 101 to 802) became effective October 1, 1977. That act controlled the proceedings as to the ruling on plaintiff's request for a change in custody (Ill. Rev. Stat. 1977, ch. 40, par. 801). Section 610 of the Act provides in part:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously

his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Ill. Rev. Stat. 1977, ch. 40, par. 610(b).

■■ The only substantial evidence to support a change in custody was the evidence that Kenneth wished to live with his father and the father's testimony that Kenneth's feelings were so strong that he threatened to run away if not permitted to do so. Even where the minor child was much younger than Kenneth (*Wells v. Wells* (1976), 36 Ill. App. 3d 488, 344 N.E.2d 37 (daughters 13 and 9 years old); *Crownover v. Crownover* (1975), 33 Ill. App. 3d 327, 337 N.E.2d 56 (daughter 11 years old)), the child's preference has been held to be a matter which the court should consider. However, no case has been called to our attention ruling the child's preference to be determinative. The trial judge was in a better position than we are to determine the accuracy of plaintiff's assertion that Kenneth threatened to run away and to assess the likely strength of the boy's threats if they were made. It is significant that Kenneth did not testify to making any such threats or having that frame of mind. His only claim of mistreatment was that he had been threatened with a whipping because of his poor grades and on cross-examination he admitted that threat to have been that he would be whipped or "grounded" and the emphasis of the threat seemed to be on the latter. Particularly in view of the more strict requirements of the new legislation that a change of custody be granted in cases of this nature only if "the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him," we cannot say that the trial court's denial of the request for a change of custody was contrary to the manifest weight of the evidence.

■■ Section 508 of the new act (Ill. Rev. Stat. 1977, ch. 40, par. 508) provides that attorney's fees may be awarded to an opposing party "after considering the financial resources of the parties * * *." Here there was no evidence presented of the relative financial resources of the parties. The award of fees must be set aside.

For the reasons stated, we reverse the portions of the order finding plaintiff in contempt, sentencing him to incarceration and ordering him to pay certain attorneys' fees. The portion of the order denying the request for change of custody is affirmed.

Reversed in part; affirmed in part.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

An examination of the entire record in this case indicates to me that the trial court judge was under a misapprehension as to the prior difficulties of the plaintiff. It further indicates that the trial court denied the father custody of the child partly because of this misapprehension that the father had been previously adjudged to be not in compliance with orders of the circuit court.

This record shows that the wife continually sought to invoke the jurisdiction of the court and to inflict various and sundry punishments on the plaintiff. The record further indicates that the husband sought whatever help he could get with reference to compliance with the visitation order. A chronology:

| | |
|---|---|
| June 1971 | Husband filed a complaint for divorce on the grounds of mental cruelty. |
| June 1971 | Counterclaim by the wife for divorce. |
| September 1971 | Husband awarded divorce; issue of custody of the child reserved. |
| September 1971 | An order providing for joint custody. |
| June 1972 | A petition to modify the custody order filed by the husband. |
| August 1972 | Petition by the wife for an increase in child support. |
| March 1973 | Decree modified as to certain matters of visitation by one parent while in custody of the other. |
| August 1973 | Petition by the wife for rule to show cause, alleging the husband to be $40 in arrears in support. |
| July 1974 | Petition by the wife to modify as to support and visitation. |
| July 1974 | Motion by the wife for bond forfeiture. |
| December 1974 | A hearing on all pending matters; and also in |
| December 1974 | Petition by the husband to modify the decree as to visitation. The record indicates that in August 1974 a supervisor of the County Welfare Department in Bemidji, Minnesota, wrote a letter to the circuit court indicating that the husband had contacted the agency, outlining the fact that Kenneth was with the father and that when the time came to return to the mother in Clinton, he refused to go, stating that he was unhappy and if he had to |

|  |  |
|---|---|
|  | go, he would run away. The letter further recited that the living situation was very adequate, the family relationship was excellent, and offering the services of that agency to the circuit court of De Witt County. |
| January 1975 | There was a motion for a continuance on the pending matters and objections by the wife. |
| February 1975 | There was an order again modifying the visitation. |
| August 1977 | A further petition by the wife for rule to show cause for failure to return child. |
| January 1978 | Motion for change of custody filed by the husband. |
| January 1978 | Motion by the wife to dismiss the petition for change of custody and, then, finally, this unhappy situation culminated in this order for contempt issued in February 1978. At the time the trial court entered the order, it was under the misapprehension that the husband had previously been found in contempt of court. |

In addition to the recited chronology, after the husband and his family moved from Minnesota to Missouri, the record indicates that the wife went to the State's Attorney's office in De Witt County, sought a warrant against the child's stepmother, went to the police department to give them a letter that the child had written to her, and then went to Missouri and there visited with school officials.

This record does not demonstrate that the husband is in contempt. On the contrary, it demonstrates that he did all that he could reasonably be expected to do to comply with the orders of the circuit court short of conduct that could well result in a 16-year-old child running away from both parents. This record, unfortunately, represents a continuing bitter fight between parents for the custody and attention of a child. The court and its processes were used but as instruments of that controversy. I would reverse the finding for contempt and enter judgment here that the custody be changed for the short period of time between now and February 1979 when the child will be of age to control his own destiny.