In *re* Marriage of TANNA JO HELD, Petitioner-Appellee, and WILLIAM THEODORE HELD, Respondent-Appellant.

Fifth District No. 78-554

Opinion filed June 19, 1979.

G. MORAN, P. J., specially concurring.

Feirich, Schoen, Mager, Green and Associates, of Carbondale, for appellant.

Kimmel, Huffman, Prosser & Kimmel, of Carbondale, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Respondent, William Theodore Held, brought this action under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) in the Circuit Court of Jackson County to vacate various provisions of a judgment for dissolution of marriage based upon alleged fraudulent representations made by his ex-wife, petitioner Tanna Jo Held. The court refused to vacate these provisions but nevertheless granted respondent some relief by modifying certain portions of the judgment. Respondent appeals from those portions of the judgment not modified or vacated. Petitioner Tanna Jo Held has filed a cross-appeal for attorney's fees.

On January 4, 1978, Mrs. Held filed a petition for the dissolution of the parties' marriage in Jackson County. Mr. Held signed a form in which he waived the necessity of process and consented to a default judgment. Prior to the hearing on the petition, negotiations took place between the parties at the offices of petitioner's attorney, Richard White. At that time,

Mr. and Mrs. Held met with Barbara Cochran, Mr. White's secretary, who asked various questions concerning the dissolution of marriage and then typed the respective answers. The attorney subsequently advised both parties by letter of the date of the hearing on the petition and further advised Mr. Held that his presence was not necessary although he could attend if he so desired.

At the hearing on January 31, 1978, Mrs. Held testified as to the terms of an alleged agreement she made with her husband concerning the property distribution and custody and support of their three minor children. The ensuing judgment of dissolution of marriage reflected much of Mrs. Held's testimony. In part, the court ordered respondent to pay $500 per month child support; awarded the marital home to Mrs. Held; ordered respondent to pay marital debts amounting to $7333 while ordering petitioner to pay one marital debt of $250; directed the parties to each pay 50 percent of all dental expenses incurred by the children; ordered respondent to maintain the existing medical policy through his employer until the children reached the age of 18 or completed their education, or to purchase a similar policy if the present one became unavailable; and required respondent to keep in full force the two small life insurance policies through Prudential Insurance Company, without encumbrance, for the benefit of his minor children and to name the minor children as beneficiaries on a $10,000 life insurance policy issued by Northwestern Mutual Life. Mr. Held, who did not attend the hearing, received a copy of the judgment two or three days after it was filed. Approximately two weeks later, Mr. Held remarried.

On May 3, 1978, respondent filed the present petition requesting that certain paragraphs of the judgment for dissolution of marriage be vacated because of fraud. Mrs. Held countered by filing a motion for attorney's fees, alleging that she had no funds with which to oppose her husband's petition.

In Mr. Held's petition and accompanying affidavit, he alleged that his ex-wife had made the following representations to him prior to the parties' dissolution of marriage, upon which the judgment was to be based: that he was entitled to no more than a 20 percent interest in the marital home because he was one of five people living there; that the attorney was representing both parties; that each party would pay 50 percent of the marital debts; and that the distribution of the equity in the marital home and the amount of child support would be decided after the marriage was dissolved. He further alleged that there was no agreement that respondent would be required to maintain the life insurance policy written by Northwestern Mutual Life as provided in the judgment for the benefit of his children; nor, he claimed, was there any agreement

that would require him to maintain medical insurance while unemployed. He claimed to have relied upon the misrepresentations of his ex-wife as to what the judgment would contain and therefore did not retain counsel or attend the dissolution hearing. Furthermore, he alleged that when he saw Tanna after the judgment she stated that its provisions would be corrected to reflect their agreement; however, the corrections were not made and the time to appeal expired.

At the hearing on the present petition, Mr. Held reiterated many of the above allegations. He added that he and his wife never agreed upon the distribution of the marital home or the amount of child support prior to their dissolution of marriage. He did not agree to pay all of the marital debts, and it was his understanding that he could borrow against the life insurance policy issued by Northwestern Mutual Life and would only have to maintain the medical insurance through his employment.

Mrs. Held, however, testified that her husband unconditionally agreed to pay $500 per month as child support and to transfer title of the home to allow her to raise the children. It was also her understanding that her husband consented to pay all of the marital debts with the exception of one optometrist bill as he was working and could afford it. She further testified that she and her husband agreed that the children would be covered by his health insurance at all times, regardless of whether he was working. She added that the children would be the beneficiaries of the three insurance policies on his life, although he could borrow against the cash value of the Northwestern Mutual Life policy.

Barbara Cochran, the legal secretary, testified that Mr. and Mrs. Held came to the attorney's office prior to the dissolution proceedings to put the terms of their agreement in writing. At this meeting, Ms. Cochran typed a statement of the agreement from information  supplied by the parties, which statement corroborated most of Mrs. Held's testimony. Cochran testified that the agreement established that child support would be $500 per month and that Mr. Held would carry health insurance even if he were not employed. She added that all life insurance policies on Mr. Held's life would remain in effect with Mrs. Held as beneficiary until either party remarried, at which time the policies would be for the benefit of the children. Furthermore, the marital home would be conveyed to the wife subject to the current outstanding mortgage. She concluded that the parties' agreement disclosed to her at the meeting conformed to the proposed dissolution order.

The trial court found no evidence of fraud on behalf of Mrs. Held and held that Mr. Held was estopped by his remarriage from vacating the judgment dissolving the marriage. Nevertheless, the court modified the original judgment based upon discrepancies it found between such

judgment and the testimony of Mrs. Held at the dissolution proceedings as follows. It ordered Mrs. Held to pay all of the dental bills of the children; required Mr. Held to maintain a medical insurance policy but only through his employment; and authorized Mr. Held to obtain loans against the cash value of the insurance policies. Lastly, the court denied Mrs. Held's request for attorney's fees as the husband's petition to vacate the dissolution order "was not superfluous or harassing in any way."

On appeal, respondent argues that the agreement incorporated into the judgment for dissolution of marriage was procured by fraud. He therefore requests this court to set aside those provisions of the judgment pertaining to the payment of marital debts, amount of child support and the disposition of the marital home. Petitioner, however, denies the presence of any fraudulent representations and contends that her ex-husband was estopped by his subsequent remarriage from seeking to vacate the judgment. (See *Baker v. Baker*, 2 Ill. App. 3d 795, 276 N.E.2d 792 (1971).) Mr. Held responds that he was not attempting to vacate the entire judgment but was merely asking the court to vacate some of its provisions and allow for various modifications upon rehearing. He claims that his remarriage does not estop him from seeking to modify a judgment for dissolution of marriage. See *Martin v. Martin*, 57 Ill. App. 3d 486, 373 N.E.2d 602 (1st Dist. 1978).

■■ We need not address the issue of estoppel as respondent has, in any event, failed to prove the existence of any fraud on the part of his ex-wife and as the court nevertheless proceeded to modify certain portions of the agreement without objection from petitioner. "The burden of proving fraud is on the party asserting it, and the evidence must be clear and convincing and cannot be established upon mere suspicion." (*Lagen v. Lagen*, 14 Ill. App. 3d 74, 78, 302 N.E.2d 201, 204 (1973).) That burden becomes particularly heavy when a party seeks to modify or vacate an agreement incorporated into a judgment of dissolution as there is a presumption favoring amicable settlements between the parties. See *Dendrinos v. Dendrinos*, 58 Ill. App. 3d 639, 374 N.E.2d 1016 (1st Dist. 1978); *Bellow v. Bellow*, 40 Ill. App. 3d 442, 352 N.E.2d 427 (1st Dist. 1976); *Lagen v. Lagen*.

■■ For a misrepresentation to constitute fraud, it must consist of a material false statement which is known to be false by the party making it, made to induce the other party to act in reliance on the truth of the statement, and actually acted upon by that other party. (*Roth v. Roth*, 45 Ill. 2d 19, 256 N.E.2d 838 (1970).) The alleged fraud in this case was that petitioner made various false statements to respondent concerning the terms of the judgment for dissolution of marriage, that respondent relied upon the statements and consequently did not seek independent legal

advice, appear at the hearing or otherwise contest the provisions actually established. Our review of the record, however, reveals that respondent never proved the existence of these misrepresentations by clear and convincing evidence. The evidence established that respondent and his wife went to the attorney's office and discussed terms of an agreement while Ms. Cochran, the secretary, recorded what they said. Ms. Cochran believed that the parties were in agreement as to provisions regarding property and child support and prepared a proposed order based upon the interview. The testimony of Mrs. Held as corroborated by the secretary indicated that the agreements resulting from the negotiations were consistent with the ultimate dissolution judgment. While Mr. Held testified otherwise, he did not present any additional evidence corroborating his testimony or refuting the evidence of petitioner and Ms. Cochran. In addition, respondent received prior notification of the time and place of the dissolution hearing and received a copy of the judgment a few days after it was rendered. The trier of fact, therefore, in assessing the credibility of the witnesses and in determining the weight to be given to their testimony, could properly decide that respondent failed to prove his allegations of fraud by clear and convincing evidence.

■■■ Respondent now argues for the first time on appeal that the court erred by failing to consider the "fairness" of the judgment. Respondent has waived this issue by failing to present it to the trial court for consideration. In any event, it is apparent that the court did consider the equities of the situation as indicated by the various modifications made by the court which alleviated some of the apparent hardships confronting respondent. Furthermore, we believe the modified judgment was not so "unconscionable" as to require setting it aside. (See Ill. Rev. Stat. 1977, ch. 40, par. 502(b).) Under the terms of this judgment, petitioner, who apparently had no previous work experience, was to receive $500 per month as support for the three children; was awarded the family home subject to the $14,000 balance on the mortgage as a place for her and the children to live; and was relieved of the bulk of the marital debts. Thus, the trial court reasonably awarded the home to the custodial parent and ordered the breadwinner of the family to pay the family debts and provide reasonable support for the three children. Considering further that respondent earned on the average approximately $18,000 a year for the past three or four years in spite of experiencing periods of manic depression and received various benefits under the modified dissolution judgment, we cannot say that the agreement incorporated into said judgment is "unconscionable." Compare *Hellige v. Hellige*, 50 Ill. App. 3d 209, 365 N.E.2d 220 (1977).

The last issue for consideration is whether the trial court improperly denied petitioner's motion for attorney's fees arising out of this section 72

action. Section 508 of the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508) provides that attorney's fees may be awarded to the opposing party in an action brought under section 72 of the Civil Practice Act "after considering the financial resources of the parties." In the present action, the court denied attorney's fees because Mr. Held's petition "was not superfluous or harassing." The court therefore based its denial of such fees on the wrong criteria as it failed to consider the respective financial resources of the parties. *Blankenship v. Blankenship*, 63 Ill. App. 3d 803, 380 N.E.2d 1165 (1978).

For the reasons stated, we reverse that portion of the judgment denying attorney's fees and remand the case for further proceedings consistent with this order. Otherwise, the judgment of the Circuit Court of Jackson County is affirmed.

Reversed in part; remanded in part; affirmed in part.

JONES, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, specially concurring:

I concur with the majority opinion.

However, I believe the trial courts in situations like this should insist on both parties being present in open court when it hears evidence in default divorce cases involving agreements of parties in domestic matters. Had this been done in this case, it is inconceivable that the motion to vacate would have been filed. Thus, a lot of time and expense and recrimination between the parties would have been prevented. Then too, when motions to vacate provisions of a default divorce decree are filed, the integrity of the judicial process is really being questioned. This could be avoided by having both parties in court.