*In re* MARRIAGE OF PATTY ANN MILLER, Petitioner-Appellee, and ROBERT J. MILLER, Respondent-Appellant.

Fourth District   No. 15851

Opinion filed September 17, 1980.

Mitchem, Tepper & Gwinn, P. C., of Urbana (John Gwinn, of counsel), for appellant.

Greaves, Lerner & Gadau, of Champaign, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal grows out of the stormy proceedings surrounding the dissolution of the marriage of the parties and the subsequent efforts of the circuit court of Douglas County to effect some sort of an agathokakological balance in the disposition of their property. Another

aspect of the problems is currently pending before this court in Miller v. Miller (General No. 16029) and is yet to be decided.

The instant case involves an order of the trial court which held the respondent husband in indirect civil contempt for failure to make required maintenance payments and also in indirect criminal contempt for failure to abide the other orders of the court. He was sentenced to 10 days in the common jail of the county on each variety of contempt, the sentences to run consecutively. No question is raised concerning the indirect civil contempt but as to the indirect criminal contempt, respondent raises two issues for our consideration: (1) whether the contempt was in fact criminal rather than civil in nature, and (2) if criminal, whether he was afforded the necessary procedural safeguards. We find that the contempt was criminal but that the safeguards were not present and therefore we reverse and remand.

Since the civil contempt is not appealed and the criminal contempt is confined to a narrow issue, *viz.*, the alleged failure of respondent to appoint an escrow agent and make an accounting of rents from a Florida property, we do not have the benefit of the full record but must reconstruct some of the events from the docket entries made by the trial judges who heard various parts of the proceedings.

In the beginning, the trial court ordered respondent to pay as temporary maintenance for petitioner the sum of $750 per month. This order was made November 9, 1978. Apparently no payments were made under this order, and a petition for rule to show cause was filed by the petitioner about December 5, 1978. Personal service of the rule was had on respondent, but he failed to appear on the appointed date and a body attachment with a $10,000 bond was ordered to issue. The total penalty on the bond was apparently posted with the circuit clerk, and while the petition was pending the marriage was ordered dissolved on March 7, 1979, by default.

On March 13, 1979, the docket indicates that a hearing was held on disposition of property and again the respondent did not appear, although proof of notice was offered and admitted by the court. The court made what appears to be a partial order, finding respondent $2,250 in arrears on the temporary maintenance order and making the $750 per month maintenance permanent. It also ordered $1,500 to be paid as an initial investigatory fee concerning the Florida property.

After various continuances, both parties and their counsel appeared in open court on May 3, 1979, and a hearing was held on the rule to show cause which had been pending since the previous December. The order emanating from this hearing is the genesis of the problems presented in this appeal. The court first distributed $5,000 of the $10,000 bond penalty

theretofore posted to the petitioner as payment of maintenance through May 15, 1979. It also ordered respondent to account for rents on Florida property from January 1978 to May 3, 1979, and further to appoint an escrow agent in Florida to collect rents and make necessary disbursements in connection with the property. It was specifically ordered that the respondent should take no further rents for his own use or benefit and that the order should be a continuing one.

The next significant proceeding was a petition for a mandatory injunction filed by the petitioner on May 18, 1979. The text of the petition does not appear in the record, but the order of the trial court, filed June 19, 1979, ordered the issuance of the writ and stated only that the writ commanded the respondent to vacate the marital home of the parties.

On July 10, 1979, the petitioner filed a document entitled "Petition for Rule to Show Cause on Mandatory Injunction." It alleged the issuance of the injunction, as recited above, and then proceeded to set forth another 12 paragraphs of petitioner's complaints, only one of which related to the marital home and another of which related to the Florida property and alleged the failure to account for income and expenses concerning it. The petition asked, *inter alia*, that respondent be held in contempt and further that he be ordered to pay to petitioner $1,000 "for further investigation" of the Florida property.

Respondent filed a motion to strike all of the allegations of the petition except those relating to the use of the marital home as not pertinent to the proceeding. This motion was denied and the respondent then filed an answer and counterclaim to the petition. In general, the counterclaim set forth that the petitioner had not paid her share of the expenses of running a 200-acre farm. It may be inferred that the farm was a principal marital asset and somewhere in the proceedings, not reflected in the record before us, it had been equally divided between the parties. This is indicated in the companion case, Miller v. Miller (General No. 16029), referred to above, which is a partition suit.

A general hearing was held on the petition and the counterclaim during which respondent was called to the stand by petitioner under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60) and testified. At the conclusion of the hearing the court found the respondent in both civil and criminal contempt and sentenced him as set forth above. The written order following the hearing finds that respondent is $3,000 in arrears in maintenance payments, that the failure to pay is wilful and contumacious; the court adjudged a sentence of 10 days for indirect civil contempt with the proviso that the contempt might be purged by payment. As already indicated, this phase of the order is not in question here. As to the criminal contempt, the finding and order is:

"3. That the respondent has failed to obey previous orders to

supply the petitioner with an accounting of monies of a certain apartment house in Florida and has failed to have an escrow agent collect rents for said apartment house, and that his failure to obey the said court order has been wilful and contumacious, and he is in indirect criminal contempt of this court.

\* \* \*

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

\* \* \*

B. That the respondent is hereby in indirect criminal contempt of this court and because of said contempt the respondent is hereby sentenced to the county jail of Douglas County, Illinois, for a period of ten days commencing forthwith.

C. That contempt sentences, set forth above, are to run consecutively."

Respondent's first contention is that the court erred in holding him in criminal contempt; that if he is guilty of anything, it must be civil contempt since it grew out of a civil proceeding. The distinction between civil and criminal contempt is well known and needs little exegesis here. In broad outline criminal contempt includes acts showing disrespect for the court, or its orders, or processes, or tending to obstruct the administration of justice. Civil contempt consists of failing to do an act ordered by the court for the benefit of another party. (*Wilson v. Prochnow* (1934), 359 Ill. 148, 194 N.E. 246.) This general overview was refined in a detailed discussion in *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737. In that case the test enunciated is whether the contempt proceeding, in the totality of the circumstances, is coercive or punitive.

Respondent argues that in the instant case the gist of the order was to force him to account and to appoint an escrow agent. Therefore, he maintains, the order was for the benefit of the petitioner and the contempt should be considered civil in nature under *Wilson.* We do not agree.

In *Marcisz,* the court said that ordinarily contempt actions growing out of marital litigation are to force the payment of money or some other compliance with the order, but it found there that the defendant had repeatedly ignored court orders and misbehaved in the court room. The court further found that although the imprisonment was for the benefit of the ex-wife, defendant's conduct lent itself more to a punitive than a coercive categorization. We find the instant case to be parallel. Respondent had repeatedly ignored summonses and court orders by failing to appear for hearings; he did not surrender possession of the marital home until ordered to do so; while not entirely clear from the record before us, it would appear that respondent had previously been

held in contempt in this same case; one of the earliest orders entered in the cause was for an accounting, and appointment of an escrow agent with a specific provision that the order was a continuing one; yet it was not complied with and in violation of the same order respondent continued to collect rents personally.

Each side cites a variety of cases in support of their positions but a reprise of all this authority would be of little assistance here. Each case turns on its own facts. One of the central facts in the instant case is that the appointment of an escrow agent is not something as easily cured as the payment of money. The purpose was to keep the funds out of respondent's possession, and this is now impossible.

■■ After reviewing the entire record before us, we are persuaded that the force of the order was intended to be punitive rather than coercive in nature and hence criminal contempt was the proper designation of respondent's conduct.

■■ However, it does not follow that the sentence must be allowed to stand. The procedural infirmities are too great. Respondent had no sufficient notice of the fact that he might be held in criminal contempt, and he was compelled to testify against himself by virtue of being called under section 60 of the Civil Practice Act for cross-examination.

If a man's liberty is to be infringed in any significant way, he is entitled to notice of the possibility of that fact and the opportunity to prepare a defense against it. In the instant case, the proceedings were technically founded on petitioner's request for a rule to show cause based on an injunction which was limited to the question of possession of the marital home. Respondent attempted by motion to keep the hearing within those bounds but this was forfended by the court's denial of his motion. Furthermore, the prayer of petitioner was only that respondent show cause "why he should not be held in contempt of this Court." Not even the customary language, "wilful and contumacious," is found in the prayer. From this it could readily be inferred that petitioner was seeking only civil contempt which always carries with it the ability to purge oneself. There was no indication in the pleadings that a flat sentence of 10 days might result. We note also that the burden was placed on respondent to "show cause." It was not a direct prayer for contempt. Compare Mr. Justice Green's special concurrence in *Archer v. Archer* (1979), 71 Ill. App. 3d 938, 390 N.E.2d 629.

As noted above, respondent was called under section 60 and thus compelled to testify against himself. In *Blankenship v. Blankenship* (1978), 63 Ill. App. 3d 803, 380 N.E.2d 1165, there was a contempt hearing which was heard in conjunction with a change of custody petition. The respondent was called under section 60 and testified. This court ultimately concluded that the contempt was civil, but in speaking of the form of the

action and of the testimony under section 60, this court said, "These procedures would have been impossible in a criminal contempt proceeding." 63 Ill. App. 3d 803, 806, 380 N.E.2d 1165, 1167.

When criminal penalties are involved in any proceeding, the burden should never shift to the respondent unless there is a positive requirement imposed by statutory or decisional law to the contrary.

We hold that although the contempt was properly denominated criminal, respondent did not receive the procedural safeguards of notice (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670), and of prohibition against the self-incrimination (*Blankenship; Marcisz*).

Therefore, that portion of the order of the circuit court of Douglas County finding the respondent in indirect criminal contempt and sentencing him to 10 days in the common jail is reversed and the cause is remanded to that court for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

MILLS, P. J., and CRAVEN, J., concur.