*In re* MARRIAGE OF CLARA BELLE MILLER, Petitioner-Appellee, and DELMAR KEITH MILLER, Respondent-Appellant.

Fourth District    No. 16918

Opinion filed August 7, 1981.

Michael J. Hollahan, of Tucker and Hollahan, of Pittsfield, for appellant.

W. Thomas Ryder, of W. Thomas Ryder, Ltd., of Jerseyville, for appellee.

Mr. JUSTICE LONDRIGAN delivered the opinion of the court:

This appeal involves the effect of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) upon a separation agreement.

The parties, petitioner Clara Belle Miller and respondent Delmar Keith Miller, were married on September 10, 1950. On December 18, 1980, the final judgment dissolving the parties' marriage was filed. This judgment of dissolution incorporated by reference a separation agreement signed by the parties. The judgment stated that under section 502(b) of the Act "the separation agreement presented to the court is not unconscionable and therefore is binding on the court."

On appeal, the respondent contends that: (1) the trial court used an improper standard when it determined that the parties' separation agreement was not unconscionable, and (2) the trial court erred by not finding that the parties' separation agreement was unconscionable.

In relevant part, section 502 of the Act states:

"Separation agreement.

(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children.

(b) The terms of the separation agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

(c) If the court finds the separation agreement unconscionable, it may request the parties to submit a revised separation agreement or upon hearing, may make orders for the disposition of property, maintenance, child support and other matters." Ill. Rev. Stat. 1979, ch. 40, par. 502(a), (b), (c).

The effective date of the "new" act was October 1, 1977. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Oddly enough there are few Illinois appellate court cases that cite to section 502 of the Act when reviewing the propriety of a separation agreement. For example, in *In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188, the petition for dissolution was filed in 1978, and, on appeal, one of the issues was whether the trial court erred by failing to set aside the separation agreement; but the court did not mention section 502(b) of the Act. (Also see *Olsher*.) Perhaps, as the petitioner suggests, the reason these and other cases have not applied the unconscionability standard of section 502(b) of the Act is because the parties have not contested the separation agreements on unconscionability grounds in the trial courts.

Nevertheless, as the Historical and Practice Notes to section 502(b) of the Act point out, it is clear that section 502(b) has changed Illinois law with respect to determining the validity of separation agreements.

"Subsection (b), which derives from section 306(b) of the Uniform Act, provides that the terms of the separation agreement, * * * are binding on the court unless the agreement is found to be unconscionable. This is intended to encourage party autonomy, * * *.

Under prior Illinois law there was a different standard for court approval. Settlement agreements were approved by the court if found to be fair and reasonable. Zupancic v. Zupancic, 48 Ill. App. 3d 256, 362 N.E.2d 1124, 6 Ill. Dec. 302 (3d Dist. 1977). But the court was not bound by the terms of a proposed settlement agreement and could in its discretion adopt it or reject it 'as seems

consistent and proper from the situation of the parties'. [Citations.] * * *.

This section does not eliminate many of the traditional grounds for setting aside settlement agreements, including grounds of fraud, coercion, and violation of any rule of law, public policy or morals. See Reininger v. Reininger, 67 Ill. App. 3d 21, 384 N.E.2d 546, 23 Ill. Dec. 752 (4th Dist. 1978). However, 'fairness' and other similar standards for setting aside settlement agreements have been replaced by the standard of unconscionability. See Held v. Held, 73 Ill. App. 3d 561, 392 N.E.2d 169, 29 Ill. Dec. 612 (5th Dist. 1979).

The purpose of subsection (b) is summarized in the Commissioners' Note: 'Subsection (b) undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable.' Uniform Marriage and Divorce Act (9A U.L.A.) §306, Commissioners' Note at 136-137. This provision also serves to reduce continuing litigation between the parties. [Citation.]

The standard of unconscionability introduced by this section is used in commercial law, where its meaning includes protection against onesidedness, oppression, or unfair surprise. Uniform Marriage and Divorce Act (9A U.L.A.) §306, Commissioners' Note at 137. Although the standard of unconscionability is new to the area of Illinois matrimonial law, it is an established doctrine in other areas of Illinois law. See, e.g., Ill. Rev. Stat. ch. 26, §2—302. The standard as it relates to separation agreements includes 'protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.' Uniform Marriage and Divorce Act (9A U.L.A.) §306, Commissioners' Note at 137." Ill. Ann. Stat., ch. 40, par. 502, Historical & Practice Notes, at 400-01 (Smith-Hurd 1980).

As the Historical and Practice Notes indicate, the standard of unconscionability is new to the area of Illinois matrimonial law. Even so, we do not understand why the respondent in this case contends that the trial court did not consider proper factors in determining the question of unconscionability. Ostensibly, the crux of the respondent's complaint is that the trial court did not consider "the economic circumstances of the parties resulting from the agreement," and limited its consideration to "the perceived circumstances at the time of the execution."

From the outset it was clear that the trial court was not restricting its determination of unconscionability to the circumstances at the time the

separation agreement was executed. At the beginning of the September 10, 1980, hearing on ancillary matters, the petitioner made a motion *in limine* to limit testimony to "the circumstances surrounding the execution of this document." The trial court denied the motion, indicating that evidence of the economic impact of the separation agreement on the parties was relevant evidence. In fact, during the ancillary hearing the trial court did not restrict the scope of the respondent's evidence in any significant manner.

■■ After hearing all of the evidence, the trial court explained why the parties' separation agreement was not unconscionable. These comments indicate that the trial court considered the circumstances surrounding the execution of the agreement to insure that the agreement was not the result of duress, fraud, misrepresentation, concealment of assets, *etc*. Further, the trial court's comments make it clear that it considered the economic circumstances of the parties in its determination that the separation agreement was not so onesided or oppressive as to render it unconscionable. The trial court also noted that the sales anticipated in the separation agreement did not or would not yield the anticipated amounts. We agree with the trial court's conclusion that this fact, in and of itself, did not render the separation agreement unconscionable.

Given the seemingly infinite combination of human conduct and circumstances, it would be foolish to attempt to set forth an all-encompassing definition of "unconscionable" for the purposes of section 502(b) of the Act. Eventually, case law will define the perimeters of "unconscionable" separation agreements. In this case the trial court did not consider any improper factors in reaching its conclusion. Accordingly, we hold that the trial court properly applied the unconscionability standard of section 502(b) of the Act to the parties' separation agreement.

The respondent also argues that the trial court erred by not finding that the parties' separation agreement was unconscionable. The respondent does not argue that the separation agreement is unconscionable because of any of the circumstances surrounding the agreement's execution. Rather, the main thrust of the respondent's argument is that the separation agreement is unconscionable because its terms are so one sided in favor of the petitioner.

We have carefully reviewed the terms of the separation agreement and the evidence presented on the parties' economic circumstances. Pursuant to the separation agreement there was a division in kind of the parties' real estate. Further, the respondent was directed to sell some real estate and machinery in order to meet certain obligations imposed upon him by the agreement. It seems that the respondent's claim of unconscionability is bottomed on the fact that the sales did not or would not yield the anticipated amounts. Viewed in a light most favorable to the

respondent, this information shows that pursuant to the separation agreement the respondent received approximately 40 percent of the parties' property, while the petitioner received the rest. Considering all the evidence presented, we, like the trial court, can find nothing unconscionable about this agreement.

■■ In connection with this issue, the respondent also argues that part of the real estate awarded to him by the separation agreement is his nonmarital property, and the trial court failed to take this fact into account. Respondent also contends that the trial court should have but failed to consider the factors of section 503(c) of the Act when it was determining whether the separation agreement was unconscionable.

The fact that some of the real estate awarded to the respondent may contain some of the respondent's nonmarital property is of little concern to us. Simply put, there is no prohibition against the disposition of nonmarital property in a separation agreement which is not unconscionable. Section 502(a) in relevant part states, "The parties may enter into a written or oral separation agreement containing provisions for disposition of any property owned by either of them * * *."

Under section 502(b) of the Act, the parties' separation agreement is "binding upon the court, unless it finds, *after considering the economic circumstances of the parties and any other relevant evidence produced by the parties * * ** that the separation agreement is unconscionable."* (Emphasis added.) The determination of whether a separation agreement is binding is made pursuant to section 502(b) of the Act. The trial court has no discretion; it must accept the agreement unless it is unconscionable. On review, the trial court's finding will stand unless it is determined that it is against the manifest weight of the evidence presented.

Findings under section 503 of the Act are not required unless there is not a valid separation agreement. Section 503(c) mandates that the trial court shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including 10 factors that are specifically enumerated in the statute. Section 503(c) also states that the trial court shall assign each spouse's nonmarital property to that spouse. In *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1129, 403 N.E.2d 730, 733, this court stated that the standard of review of a trial court's disposition of marital property under section 503 of the Act is "whether—after considering the factors enumerated in section 503(c)— the trial court abused its discretion."

Thus, one can see that section 503 of the Act is not applicable to the case at bar, and that a disposition of marital property under section 503 of the Act will be reviewed under a different standard than a trial court's determination of whether a separation agreement is unconscionable under section 502(b) of the Act. This is not to say, however, that the same

evidence cannot be relevant for both determinations. Under section 502(b), the trial court must consider the economic circumstances of the parties. The economic circumstances of the parties must also be considered under a disposition of marital property pursuant to section 503(c). Similarly, section 502(b) commands the trial court to consider the "other relevant evidence produced by the parties." Thus, under section 502(b) the trial court will consider the factors enumerated in section 503(c) to the extent that they are relevant and produced by one of the parties. But this does not mean that a trial court applying section 502(b) has to enumerate any of the factors listed in section 503(c). Here, it is clear that the trial court made its determination based upon all of the evidence produced by the parties.

Because an agreement merely favors one party over the other does not make it unconscionable. At most this is all the respondent has shown. The trial court's finding that the parties' separation agreement was not unconscionable is supported by the manifest weight of the evidence in this record.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.