Muriel G. Filko, Plaintiff-Appellant, v. Vladimir Filko, Defendant-Appellee.

Gen. No. 54,241.

First District.

June 12, 1970.

Rehearing denied July 21, 1970.

George B. Collins, Alan O. Amos, and Jeffrey Schulman, of Chicago (Collins & Amos, of counsel), for appellant.

Benjamin B. Davis and Muller Davis, of Chicago (Davis, Boyden, Jones & Baer, of counsel), for appellee.

ALLOY, J.

This is an appeal from a decree of the Circuit Court of Cook County in a proceeding filed as an action for separate maintenance and, in the alternative, for divorce by plaintiff Muriel G. Filko as against defendant Vladimir Filko.

The record discloses that the parties to this cause through their attorneys negotiated for about two years and finally reached an oral agreement for settlement which was agreed to by both parties and confirmed by testimony in open court before the trial judge. Before the written decree was entered, the plaintiff Muriel G. Filko retained a new attorney who appeared at the time the decree was to be entered. He objected, on behalf of plaintiff, to the entry of the decree. The trial court did not allow the plaintiff's new attorney to enter an appearance as plaintiff's counsel at that time. Thereupon, the decree was entered. Plaintiff's new attorney, within a period of 30 days, later moved to vacate the decree. Such motion was denied.

Plaintiff's action for separate maintenance or, in the alternative, for a divorce, was filed in June 1967. Negotiations with respect to this domestic conflict were carried on for approximately two years on questions of property settlement, alimony and support payments. When the cause came to trial on April 14, 1969, plaintiff was represented by attorney Salita. Plaintiff had been

represented previously by two different attorneys in the proceeding. Following nearly six hours of conferences on April 14, 1969, in which the parties, their attorneys and the trial judge participated in some manner, an agreement was reached by the parties. Plaintiff and her attorneys acquiesced in the terms of the agreement. The cause then proceeded as a divorce case, and proof was made by plaintiff of the physical cruelty by defendant. Each provision of the agreed property settlement and the proposed provisions of the decree for support, alimony, and other provisions were verified in testimony given by plaintiff in open court on April 14, 1969.

By reason of the fact that the agreement was reached on April 14, 1969 (the day of the hearing) the decree had not been prepared so that the parties met again on April 25, 1969, before the trial court, for the purpose of having the written decree entered. At this time, plaintiff appeared in open court with the new attorney, a Mr. Collins, and attorney Collins requested that he be substituted as attorney for plaintiff in place of Mr. Salita. Mr. Salita refused to withdraw and the trial judge refused to substitute Mr. Collins as an attorney for plaintiff at this time. The divorce decree, which had been prepared by the attorney for defendant and examined by Mr. Salita, was presented, and plaintiff's new attorney, although not her attorney of record, objected to the entry of the decree. This attorney, Mr. Collins, offered to present proof that plaintiff was emotionally imbalanced when she orally consented to the decree and that she did not understand the provisions of the decree. The court permitted the new attorney to make this offer of proof. The attorney also offered to show that the 18-year-old son of the parties to the divorce action was suffering from a permanent mental illness as a result of taking LSD and that this son was inadequately provided for in the decree. At this hearing, attorney Collins

also offered to prove that defendant was worth more financially than the facts previously presented disclosed and that, as a result, the plaintiff's property settlement was inadequate. The attorney stated that he had information to show that defendant owned 37½% of a company that made one million dollars in the prior year. The attorney also stated that plaintiff withdrew her consent to the decree. The trial judge stated several times that he would permit Mr. Collins to make his record, but would not permit him to introduce any testimony in the state of the record. The petition which was prepared and later filed by attorney Collins set forth the objections to the entry of the decree and was made a part of the transcript of the hearing of April 25, 1969. The decree was entered by the Judge on April 25, 1969, following the discussion between the attorneys and the trial judge. Thereafter, on April 29, 1969, there was a hearing fixing fees for plaintiff's attorney, Mr. Salita.

On May 7, 1969, attorney Collins filed a motion to vacate the decree for divorce alleging that the written decree varied from the oral agreement of the parties in several respects such as the alimony provisions, insurance policies for the two children's education, and provisions as to defendant leaving a portion of his estate to the two children of the marriage. This petition also repeated the matters relating to the 18-year-old son of the parties and the alleged understatement of the financial condition of the defendant. A hearing on the motion to vacate was held on May 15, 1969, with attorney Collins, attorney Salita, and defendant's attorney all present. While no testimony was permitted, attorney Collins made an offer of proof as to his allegations in the motion to vacate the decree. The motion to vacate the decree was denied.

The first question before this Court is whether the trial judge committed reversible error in not permitting plaintiff's new attorney, Mr. Collins, to file his appear-

ance on April 25, 1969, at the time the hearing was held to have the written decree entered. Plaintiff contends, in this connection, that she had a right to be represented by an attorney of her own choosing and that she could substitute attorneys at any time. It was the contention of plaintiff that when the court continued to recognize Mr. Salita as attorney for the plaintiff, the court committed reversible error. On appeal in this Court, plaintiff cites a number of Illinois cases in support of the contention that plaintiff had the unlimited right to retain new counsel. In Price v. Seator, 337 Ill App 248, 85 NE2d 848, at 258, the court indicated that a litigant has the unquestioned right to discharge an attorney at any time, with or without cause, subject only to his obligation to compensate an attorney without fault for services theretofore rendered. This case, however, does not deal specifically with the right to substitute attorneys but rather the question of whether an attorney had a right to compensation after being discharged by the client. There were similar considerations in Pressney v. Pressney, 339 Ill App 371, 90 NE2d 119, and Miller v. Solomon, 49 Ill App2d 156, 199 NE2d 660.

The cases in this State, however, do indicate that the right to substitute counsel is not an absolute right. As pointed out in the case of People v. Franklin, 415 Ill 514, 114 NE2d 661, where the court denied the motion for substitution of a new attorney for defendant and proceeded to trial (at pages 516–17):

> "The right of a client to discharge his attorney at any time, or to substitute attorneys at any stage of a proceeding either with, or without cause, is well established. (See: 7 CJS, Attorney & Client, sec 119.) It is not, however, a right so absolute that its exercise may not be denied where it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise

16

would enable a defendant in a criminal proceeding such as this, to delay his trial until he had exhausted his capabilities of hiring different counsel and to thus harass and delay the effective prosecution of crime."

In the case of People v. Franklin, supra, the court concluded that defendant's case was not prejudiced and that there was no abuse of discretion in the refusal of the trial court to allow the substitution of attorneys before proceeding with the trial. To the same effect is People v. Mueller, 2 Ill2d 311, 118 NE2d 1. We consider it significant that both the Franklin and Mueller cases were criminal cases and that in such cases the right of the accused to the attorney of his choice is guarded even more closely than in civil matters. A trial judge has discretion in allowing substitution, and if substitution of counsel would unduly prejudice the other party or interfere with the administration of justice, the decision of the trial judge in refusing to allow such substitution should be upheld unless there is an abuse of such discretion. The court should also give consideration to whether the party seeking the substitution would suffer by reason of the prosecution of the lawsuit through a refusal to allow the substitution.

In applying these tests to the case before us, it is clear that the trial judge did not abuse his discretion in refusing to allow plaintiff to substitute counsel on April 25, 1969, the time when the decree was to be entered. An agreement involving the divorce decree had been agreed upon orally by the plaintiff while she was represented by Mr. Salita. There was no showing that Mr. Salita was at fault in any way at the time in his representation of the plaintiff. Everything which was required to be done had been completed in the divorce action and if a decree had been ready it would have been entered at such time. All that was required to con-

17

clude the proceeding, which had been orally agreed upon and stipulated to in open court by the parties, was the entry of the written decree. To permit a new attorney to step in and represent the plaintiff at this stage of the litigation and thereby attempt to withdraw plaintiff's consent, would obviously interfere with the administration of justice and would be unfair to the defendant. Unless a plaintiff could show some valid reason for substitution of attorney at this stage of the proceedings, there would be no basis for setting aside the determination of the trial judge in refusing the request for substitution of attorneys.

██ ██ In Savich v. Savich, 12 Ill2d 454, 147 NE2d 85, a request for substitution of attorney had been made before the hearing began and the old attorney agreed to withdraw. Plaintiff in that case stated that she did not trust her present attorney but the court made her proceed with the old attorney even though the old attorney offered to withdraw. In that case the trial judge was properly reversed for failing to allow the substitution. In the cause before us, there is no showing of any prejudice to plaintiff by refusal of the court to allow her new attorney to file his appearance and proceed as counsel for plaintiff. There was no showing of any misconduct on the part of plaintiff's attorney, Mr. Salita. Plaintiff's new attorney did not show where he could have presented anything new which would have aided plaintiff's case at the stage of the litigation when he sought to be substituted. Plaintiff had already consented to the terms of the decree in open court and she could not change her consent merely by changing attorneys (In re Estate of Moss, 109 Ill App2d 185, 248 NE2d 513). The trial judge allowed Mr. Collins to make a record at the time the decree was entered and to make an offer of proof. He was also permitted to appear later at a hearing on fees and eventually he was substituted as plaintiff's attorney when he filed a

motion to vacate the decree. The attorney she desired, therefore, participated as attorney for plaintiff and did virtually anything he could have done if he had been subsituted as plaintiff's attorney of record on April 25, 1969. In view of the record and on the basis of the Franklin case we do not feel that this Court would be justified in interfering with the discretion exercised by the trial court since there was no showing of prejudice to plaintiff in this cause.

■ We also feel that there was no error in the entry of the decree in this cause in light of the objections made by Mr. Collins as counsel for plaintiff. Plaintiff offered to prove that, at the time she orally assented to the decree while testifying in open court, she was in the state of emotional imbalance and did not understand the settlement. This contention was general in nature and was not sufficient cause to require the trial judge to refuse to enter the decree. The trial judge personally talked for several hours to plaintiff on the day she testified and gave her verbal agreement to the proposed decree. The trial judge stated for the record, "I want the record to show that I talked at great length with Mr. Filko, that I talked at great length with Mrs. Filko, prior to the hearing." Based upon the extended conversations which the trial judge had with the plaintiff on the day of the hearing and his observation of Mrs. Filko, we do not believe that the objection of plaintiff that she was emotionally imbalanced at the time she testified could be an appropriate basis for a contention that the trial judge had abused his discretion in entering the decree. The record of her testimony shows no indication of any emotional imbalance and the trial judge had the opportunity to observe her conduct and talk with her at length (prior to her testimony) and the determination of the trial judge that plaintiff was of sufficient state of mind to understand the matters to which she testified should not be disturbed.

19

■ As we indicated in the course of this opinion, plaintiff also contended that it was error to enter the decree of April 25, 1969, since it did not properly provide for the future support of the 18-year-old son who was permanently ill as a result of the use of LSD. The statements by the trial judge, which appear in the record, show that the trial judge was familiar with the problems involving the 18-year-old son of the parties and had discussed them with plaintiff and her attorney prior to the hearing. The trial judge had stated for the record that Mrs. Filko had given him this information in confidence on April 25, 1969, and that she did not wish it to appear in the record. The provisions for the 18-year-old son appear to be fair and the testimony of Mrs. Filko that such provisions were agreeable to her and the fact that the trial judge stated that he was familiar with the problem in talking with Mrs. Filko, make it clear that there should be no basis for setting aside the decree on the issue of the question of support for the 18-year-old son. An important consideration in this respect is the fact that the court retains jurisdiction over the boy while he is a minor and that the divorce decree does not alter the fact that the boy is defendant's son and that defendant has a responsibility to care for him. If more money is needed for support of the son, plaintiff can come back into court and request such additional sum on a proper showing.

■ At the April 25 hearing, Mr. Collins the new attorney for plaintiff offered to prove that defendant owned $37\frac{1}{2}\%$ of a company which made over a million dollars in 1968. The financial status of defendant was one of the major concerns of plaintiff over the nearly two years of pretrial proceedings in connection with the divorce. Pretrial discovery was extensive by each of the three attorneys who previously represented plaintiff. Defendant's deposition was taken four times, and the depositions covered questions about defendant's as-

20

sets, defendant's income from 1955 through 1968, and included an examination of his income tax returns. There was inquiry into defendant's bank accounts and his expenses for business and travel. Defendant was employed by and involved in the ownership of two closely held corporations. Defendant's involvement in these two corporations was gone over thoroughly prior to trial and pretrial discovery covered such matters as a stock-purchase agreement, insurance on defendant's life, retirement funds and defendant's salary. The deposition of the comptroller of one of the corporations was taken and the court allowed discovery of virtually every aspect of defendant's contact with such corporation. The only discovery which was denied to the plaintiff concerned salaries of employees of the corporation, other than defendant's salary and other affairs of the corporation which did not involve the defendant. Defendant submitted a financial statement under oath showing his assets as of December 31, 1968. The statement appears to be in line with facts elicited by various discovery procedures. There were no facts specified as to what attorney Collins could show and there was only a general statement that he had learned of an increase in defendant's net worth. If there were any such facts which could have been directed to the court, they should have been presented in detail in his pleading. Since there were no such facts alleged, the trial judge committed no error in refusing to defer the signing of the decree because of this offer of proof.

There is a contention by plaintiff that the facts in the instant case are similar to those in James v. James, 14 Ill2d 295, 152 NE2d 582, where a property settlement which had been worked out at a conference between the parties, their attorneys and the trial judge was set aside by the Supreme Court. In that case, the settlement was hastily contrived and the appellant manifested her dissatisfaction with the offer which was made to her. In

that case, there was a misrepresentation made (by the defendant) as to the status of assets and also as to her position with respect to a home (which was owned in joint tenancy) where it was represented she would have no equity unless she had worked and contributed to the purchase price. In the cause before us there was no showing of any misconduct or misrepresentation on the part of attorneys or anyone of the type found in the James case. In the cause before us, neither plaintiff's own attorney nor the trial judge coerced the plaintiff in any manner into making settlement.

The cause before us is more in line with the case of Browning v. Browning, 350 Ill App 502, 113 NE2d 182. While that case is published only in abstract form, an examination of the full opinion discloses that the wife attempted to set aside a decree alleging many of the same contentions that plaintiff has alleged in the instant case, including impairment of her ability to comprehend what was transpiring when she testified at the hearing and dissimilarities between the written decree and her understanding of the terms. The Appellate Court, on appeal in the Browning case, stated that the wife argued that when new counsel was retained by her and appeared on January 21, 1952 hearing, the court was without authority to enter the decree even though other counsel had consented to it. The court rejected this contention and stated specifically:

> "There is no public interest involved in setting aside this decree in order that the wife may continue to exact her efforts to obtain more than was agreed to at the time of the divorce hearing."

On the basis of the record in the cause before us, we believe that this should be the conclusion of this court on review. We would not be justified in reaching a contrary conclusion on the basis of the record.

■ We should note that the offer of proof by plaintiff's new attorney sufficiently informed the court of what plaintiff's witnesses would testify to, so that it was not necessary for the court to hear evidence on the motion to vacate the divorce decree. Since the trial judge was familiar with all the matters that plaintiff wished to present in support of his motion it could hardly be said that the court was in error in refusing to allow the plaintiff to present witnesses to establish such facts as were referred to by the attorney in the petition (Heldt v. Watts, 329 Ill App 408, 415, 69 NE2d 97). There was no showing that the witnesses would testify as to anything more than was specified in the offer of proof.

The motion to vacate the decree referred to "misstatement" of defendant's net worth, which plaintiff's attorney had learned from information as to increased sales of the corporation and changes in inventory. No fraud was specifically alleged and there was no basis for allowance of the motion to vacate on the strength of such general allegation (Horan v. Blowitz, 13 Ill2d 126, 133, 148 NE2d 445). Most of the matters raised in the motion to vacate involved nothing new as to such issues. There was no showing of any newly discovered evidence and there was no showing that evidence which would have been presented could not have been obtained prior to the April 14 hearing. On such basis, the refusal of the court to vacate the decree was proper (Van Dam v. Van Dam, 21 Ill2d 212, 171 NE2d 594).

■ ■ Any discrepancies which might have existed between the understanding of the parties as to a settlement and to testimony of plaintiff at the hearing at which the decree was entered were of such minor character as not to constitute grounds for vacating the decree. At the hearing plaintiff testified that she understood the alimony would terminate if she died. The decree, in Paragraph 4, provided that if either plaintiff or

defendant died, alimony ceased. In Paragraph 15, the decree provided for life insurance to pay the alimony if defendant died so that, in effect, there was no actual discrepancy. The circumstance, also, that the decree provides that the husband may claim the two sons as income tax deductions, even though not covered in the testimony at the hearing, is customary and is a matter which would not justify setting aside the decree. Only a few years would remain before the older boy was out of college and the deduction would not be substantial. The deduction for income tax purposes of $600 annually would be rather inconsequential and should not be a ground for reversal, particularly since plaintiff's testimony did not cover this point at the hearing.

 On appeal, an issue is raised as to whether there was an understanding that the children were to be protected as against defendant's disposing of his property before his death by gifts or trusts. Plaintiff's testimony at the hearing had indicated nothing with respect to setting aside at this time of a portion of defendant's property for the benefit of the children. There was, therefore, no real variance between the testimony and the decree. There was also a contention that there was a variance between the decree and plaintiff's testimony with respect to payment of college expenses for the two boys. There was a question of whether plaintiff could use life insurance policies that his father had purchased for the boys' education in order to pay such college expenses. The point was covered at the hearing and the decree embodied the terms of such agreement. Plaintiff argued that it was wrong to provide in the decree that defendant had the right to approve the college attended as the defendant might designate a college which the child could not attend. This, however, is not a valid objection, since defendant would be required to be reasonable in his approval of a college.

██ ██ On the basis of our examination of the record, we do not believe the plaintiff has shown any substantial variance between the terms of the decree and her oral agreement and testimony. The trial court in the instant case based the decree on the oral agreement and stipulation and testimony by parties in open court. The parties are bound by such stipulations unless it can be shown that the stipulations were unreasonable or resulted from fraud. The court will uphold such agreement. As indicated in In re Estate of Moss, 109 Ill App2d 185, 248 NE2d 513, before a written agreement was signed by the parties in the Moss case, one of the parties to the stipulation appeared in the court with a new attorney and requested the court to reconsider the oral stipulation since she did not understand the stipulation and had not given her former attorney the authority to make such agreement. The court in that case said (at 192–193):

> "The reviewing courts of this state have consistently held that stipulations by parties or their attorneys affecting the conduct of suits will be enforced, unless there is proper showing that any stipulation is unreasonable, violative of public morals or the result of fraud. . . . 'Thus, a party to a pending litigation may waive, by stipulation, his statutory or constitutional rights and the court will hold him bound by such stipulation.' People v. Spring Lake Dist., 253 Ill 479, 492, 97 NE 1042. . . Stipulations are looked upon with favor by the courts, since they tend to promote disposition of cases, simplification of issues and the saving of expense to litigants. The ends of justice are furthered by stipulations of settlement and the reluctance of courts to vitiate such agreements is well founded in fundamental logic. 'Parties will not be relieved from a stipulation in absence of a clear showing that the matter stipulated is untrue, and then only when the

application is seasonably made.' Brink v. Industrial Commission, 368 Ill 607, 15 NE2d 491, 492."

The stipulation in the present case was fair and there was no showing of any fraud. In absence of a showing that her previous attorney was not properly representing her, it is certainly clear from the record that such representation was proper in all respects and that the decree of the trial judge should be affirmed. The stipulation was voluntary, valid, binding and enforceable. In the words expressed in the Moss case, supra, "There must be a point of no return—a moment of finality—in all litigations. This case is no exception."

The decree of the Circuit Court of Cook County will, therefore, be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.