*In re* MARRIAGE OF PATRICIA RIEDY, Petitioner-Appellant, and PATRICK RIEDY, Respondent-Appellee.

Second District   No. 83—1060

Opinion filed January 24, 1985.

Howard W. Broecker and Terry Fawell, both of Geneva, for appellant.

Harold G. Field, of Burek & Field, of Wheaton, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Petitioner-appellant, Patricia Riedy, appeals from an order denying her petition to vacate judgment for dissolution of marriage.

On July 9, 1981, petitioner filed a petition for legal separation. The respondent filed his response and counterpetitioned for dissolution of marriage on July 15, 1981. Petitioner then contested the relief requested in the counterpetition. The parties had been married for over 30 years and had 10 children at the time the proceedings were commenced.

A trial on grounds was to be heard by the court but the parties stipulated that the issue of grounds for a legal separation would be heard as an uncontested matter. Respondent withdrew his petition for dissolution of marriage. After hearing testimony the court found that grounds existed and entered an order of default. On July 14, 1982, petitioner orally moved to amend her petition for a legal separation to a petition for dissolution of marriage. The parties stipulated that the previously proved grounds would stand and be sufficient for the amended petition. It was represented to the court that the parties had reached an oral agreement as to all remaining issues. The petitioner stated that she understood the agreement and entered into it fully and voluntarily.

The court found that the grounds were proved and that the property settlement was fair and just. On August 30, 1982, respondent presented a motion requesting the court to require petitioner's attor-

ney to prepare and enter the judgment. Petitioner was ordered to appear in court on September 17, 1982, when her attorney presented his petition for attorney fees, and she then requested two weeks to seek new counsel.

The judgment of dissolution was finally prepared by respondent's attorney and was filed on September 20, 1982. On October 1, 1982, petitioner's attorney secured a judgment against her for attorney fees in the amount of $12,726. Petitioner retained substitute counsel and on October 8, 1982, within 30 days of entry of judgment, filed a petition to vacate judgment for dissolution of marriage, pursuant to the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203). After a contested hearing her petition was denied. Petitioner then requested the court to vacate, modify or reconsider its order denying the petition, and that was also denied.

Appellant argues that the trial court abused its discretion in denying her petition to vacate the judgment for dissolution of marriage.

■ Section 502 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 502) is generally intended to encourage parties to reach an amicable settlement of their rights. The terms of the agreement, except as they pertain to children, are binding on the court unless the agreement is found to be unconscionable. When a party seeks to vacate or modify a property settlement incorporated in a divorce decree, all presumptions are in favor of the validity of the settlement. (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411.) It has been held that modification of a divorce decree rests in the sound discretion of the trial court and courts of review will not disturb its findings unless the evidence clearly so requires. (*Harding v. Harding* (1978), 59 Ill. App. 3d 25; *Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639.) A reviewing court may not reverse a judgment of the trial court merely because different conclusions could be drawn or if reversal would involve merely a substitution of judgment for that of the trier of fact. (*Doggett v. Doggett* (1977), 51 Ill. App. 3d 868.) Nevertheless, although the law looks with favor upon such settlements, the terms of an agreement will not be given effect if procured by fraud or coercion or if contrary to any rule of law, public policy or morals. (*James v. James* (1958), 14 Ill. 2d 295; *In re Marriage of Pearson* (1981), 101 Ill. App. 3d 422.) Therefore, it has been held recently that the inquiry into unconscionability in a divorce agreement involves at least two separate considerations: one, the conditions under which the agreement was made, and two, the economic circumstances of the parties resulting from the agreement. *In re Marriage of Foster* (1983), 115

Ill. App. 3d 969.

In the present case, petitioner argues that both of the above considerations warranted a vacation of the judgment because the agreement was not only manifestly unfair but was the result of fraud, misrepresentation and coercion.

To support petitioner's claim of coercion, she claims that on the date of the prove-up she was upset, emotionally distraught and under great pressure. She further states that her petition was orally amended to dissolution rather than legal separation on the date of the prove-up, implying that she was forced to do so against her will. Prior to the prove-up, petitioner testified that her former attorney "just kept saying, say yes to everything, say yes, say yes."

Duress has been defined as including the imposition, oppression, undue influence or the taking of undue advantage of the stress of another whereby one is deprived of the exercise of his free will. (*Higgins v. Brunswick Corp.* (1979), 76 Ill. App. 3d 273; *Stavins v. Stavins* (1979), 70 Ill. App. 3d 622.) Evidence of coercion must be clear and convincing in order for a court to set aside the agreement on this basis (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924), and the burden of proving duress is on the person asserting it. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181.) Considering petitioner's claim of coercion in light of the above, her allegations fall short of meeting the clear and convincing standard of proof as set forth in *Carlson*. Although petitioner claims that she was upset and under great pressure, this is far from uncommon in divorce proceedings and does not of itself imply coercion. (*Beattie v. Beattie* (1977), 53 Ill. App. 3d 501.) Furthermore, those cases in which evidence of coercion was found usually involved hastily contrived agreements occurring only hours before the hearing. (See *James v. James* (1958), 14 Ill. 2d 295; *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457.) Although it appears that the agreement in the present case was put in its final form over a two-day period prior to the prove-up, petitioner had had three attorneys, took part in depositions and had discussed settlement terms well in advance of the prove-up. Petitioner stated that she was not aware that the court would not have the power under a legal separation to divide the property; however, the attorney who represented her at the time of the prove-up testified that he had discussed with her the difference between legal separation and dissolution of marriage many times. He also stated that the subject of legal separation versus a dissolution had come up intermittently from the onset, although the consensus consistently was legal separation. Also, petitioner's first attorney's pretrial memorandum had already set forth all assets and

valuations. The record shows that there were many settlement discussions prior to the two days spent in court. Petitioner, in her brief, makes reference to a list given to her attorney prior to the hearing, outlining her proposed settlement in the event there was a dissolution of marriage. All of the above support the conclusion, as respondent argues, that if dissolution had not been considered a possibility by petitioner, the value of the property would not have been relevant. Therefore, her claim of coercion appears unfounded.

■ Petitioner's allegation of fraud and misrepresentation centers mainly on two claims; first, the respondent indicated that his health insurance was still in effect at the time of prove-up, which would have allowed petitioner to convert the coverage into an individual policy for herself. Actually, respondent's policy at some point in time appears to have lapsed because of nonpayment of premiums. Petitioner points to her history of illness as making the conversion privilege especially important. Secondly, petitioner states that her agreement to pay her own attorney fees was based on her attorney's representation that his fee would be approximately $5,000, not $12,000, which was the amount actually billed to her.

This court has held that in order to be fraudulent, a misrepresentation must consist of a false statement of material fact, known to be false by the party making it, made for the purpose of inducing the other party to act in reliance on its truth, and in fact relied upon by the other party. Fraud must be established by clear and convincing evidence. (*In re Marriage of Maher* (1981), 95 Ill. App. 3d 1039.) In the present case petitioner argues that respondent was aware that his insurance had been cancelled prior to judgment and that petitioner relied upon his representation that the policy was still in effect so that she could convert the family policy to an individual one for herself. In reference to the issue of insurance coverage, the record is unclear and at times conflicting. At the prove-up, respondent stated that he was in agreement with the terms of the settlement as they were set forth by petitioner in her testimony. Petitioner had testified that her understanding was that respondent was to keep and maintain major medical insurance for the minor children. No mention was made of a conversion privilege for petitioner.

At the post-trial hearing on petitioner's motion to vacate judgment, respondent testified that he had represented to the court that he had insurance coverage, but that he knew at the time that he was in arrears with the payments although he did not bring the fact of this delinquency to the attention of petitioner or the court. He also stated that as of July 14, 1982 (date of the prove-up), the insurance

had *not* been cancelled. However, respondent's testimony is confusing as to whether or not he had knowledge that the policy was in effect on September 17, 1982. The record also shows that respondent's deposition testimony of February 9, 1983, indicated that he realized it was generally understood that he had health insurance. Petitioner also testified that she had talked to a Mr. Venard about getting insurance through respondent's union *prior* to the July 14 court date, but the record does not reveal what was discussed at that time. She stated, however, that she had told her attorney "all these things."

Two seemingly conflicting letters are also of record. The first, dated November 19, 1982, indicates that respondent was dropped from the health insurance plan for nonpayment and had purchased other hospitalization. The second letter, however, dated December 14, 1982, shows a breakdown of the delinquent contributions implying that if paid, the health and welfare coverage would still be effective. Petitioner's former attorney also testified at the post-judgment hearing that he was under the impression at the time of prove-up that respondent's health insurance was still in effect. He stated that he had discussed the conversion of the policy from group to individual with respondent's attorney during settlement discussions but had not made an independent investigation of the matter. He further testified that after the prove-up he had received two letters from respondent's attorney regarding the insurance conversion but had not discussed them with petitioner because she never responded to his letters and phone calls asking her to come into the office to discuss the matter. The latter situation was apparently connected to petitioner's dissatisfaction with her attorney at the time because her settlement agreement to pay her own attorney fees was predicated on her attorney's represented estimation of his fee as being $5,000, when in fact she received a bill for $12,000.

The controversy between petitioner and her then counsel over the amount of the latter's fees originated before the entry of judgment for dissolution on September 20, 1982, but after the prove-up and agreed property settlement. This dispute cannot be considered attributable to respondent, nor does it relate to the claimed issues of fraud, duress or coercion. It should be noted that the question of fees charged petitioner was settled by separate order pursuant to agreement.

After hearing the testimony outlined above, the trial court found that petitioner failed to prove that any fraud had been committed upon her. As we have previously stated, the existence of fraud must be established by clear and convincing evidence. In view of the fact

that it cannot be determined exactly when respondent's hospitalization was actually dropped and if respondent was aware of any cancellation at the time of prove-up, together with the settlement agreement referring only to respondent's obligation to retain health insurance for the children, the evidence fails to support petitioner's claim of fraud and misrepresentation.

■ Petitioner's claim of unconscionability in relation to the resulting economic circumstances of the parties requires the application by the trial court of the traditional concepts employed in commercial law. (*In re Marriage of Foster* (1983), 115 Ill. App. 3d 969.) To be noted is that the "fairness" standard and other similar standards for setting aside settlement agreements have been replaced by the standard of unconscionability. (115 Ill. App. 3d 969, 972.) An unconscionable bargain has been defined as one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other. The term unconscionability includes an absence of meaningful choice on the part of one of the parties together with terms which are unreasonably favorable to the other party. A contract is unconscionable when it is improvident, totally one-sided or oppressive. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930; *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084.) Absent such a finding the settlement is binding upon the court. (Ill. Rev. Stat. 1983, ch. 40, par. 502(d).) On review, the trial court's finding will stand unless it is against the manifest weight of the evidence.

A review of the terms of the separation agreement indicates that petitioner received property paying $1,200 per month. Additionally she received $1,510 a month for life and $400 a month child support until March 24, 1987. She also received a Caprice station wagon, and $100,000 in life insurance was to be taken out and paid by respondent as security for the $1,510 payments. Respondent was awarded partial interest in five parcels of vacant property, the residual value of the nonmarital EZ-Go Gas Station, $5,000 savings (less $2,000 for family bills) and another property whose value was stated to be $230,000. Based on the record evidence, the court made a finding that the agreement was fair and equitable. Since the agreement on its face showed no evidence of unconscionability due to an unreasonable economic favoring of the respondent, the agreement was binding upon the court. Neither petitioner's motion for vacation of judgment nor the subsequent hearing provided the court with any further evidence of economic disparity rising to the level of unconscionability. Especially notable was the award to petitioner of the sum of $1,510 per

month for life. That an agreement merely favors one party over the other does not make it unconscionable. (*In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1089.) Therefore, the trial court's finding in this regard was not against the manifest weight of the evidence.

Appellee has contended that because appellant accepted benefits under the judgment for dissolution of marriage, she is estopped from attacking that judgment on appeal. We affirm the order of the trial court and therefore neither consider nor decide this contention.

Affirmed.

NASH, P.J., and REINHARD, J., concur.