*In re* MARRIAGE OF ROSEMARY CHAPMAN, Petitioner-Appellee, and ARNOLD CHAPMAN, Respondent-Appellant.

Second District    No. 2—86—0692

Opinion filed October 30, 1987.

Law Office of Stanley F. Kaplan, P.C., of Chicago (Stanley Kaplan and Clair M. Adair, of counsel), for appellant.

John E. McNeal, of Warsawsky, McNeal, Fabing & Associates, of Chicago, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Respondent, Arnold Chapman, appeals from the denial of his motion to vacate certain property settlement provisions of a judgment for dissolution of his marriage to petitioner, Rosemary Chapman. Arnold contends that the trial court erred by disposing of his motion without benefit of an evidentiary hearing and by failing to find that the prop-

erty agreement is unconscionable. We affirm.

The petition for dissolution of marriage was filed by Rosemary on May 4, 1984. The record reflects that between the date of filing and April 1986, when trial was scheduled, the parties were in court numerous times on petitions for rules to show cause, various petitions regarding custody and visitation of the couple's minor children, and a variety of motions requesting either restriction of the parties' activities or imposition of duties or sanctions. The court appointed a sequestrator who engaged in extensive discovery, investigation, and depositions in order to determine the extent and location of the assets in the marital estate. The parties also did extensive discovery.

Trial was set to begin on April 7, 1986. Arnold states in his brief that prior to the start of the trial "the court attempted to mediate a settlement, but was unsuccessful." According to Rosemary's brief, "[t]he court participated in extensive settlement negotiations with opposing Counsel, who were in immediate and direct, next room, consultation with the parties over the first two days of the dates set for trial." On April 9 the court announced on the record that the matter was up for trial. The judge explained that during the preceding few days there had been a series of negotiations which had now broken down. According to the rest of the court's remarks, at the commencement of trial counsel for both parties announced that their clients had worked out a settlement and resolution of the issues. The case proceeded to prove-up of all matters.

Arnold testified that he understood the terms of the settlement agreement as they were recited by counsel and noted that, although he was not satisfied with it, he was willing to be bound by the agreement. He stated that he wished to start a new life and be done with the divorce. In response to direct questioning by the court, Arnold indicated that if the court accepted the settlement, he would agree to be bound by its terms.

Testimony by both Arnold and Rosemary indicated a disagreement as to the amount and source of the marital estate. Rosemary contended that the marital assets totaled somewhere between $1 million and $1.2 million, while Arnold placed them in the neighborhood of $600,000. Arnold also claimed that a good portion of the marital estate came from nonmarital assets.

The court orally granted the dissolution of marriage and, after making a finding that the settlement agreement did not appear to be unconscionable, accepted the provisions of the agreement. Judgment for dissolution was entered on May 21, 1986, over an objection by Arnold. The judgment recited that the parties and the court had par-

ticipated in excess of two days of negotiation and had reached agreement on all issues. The terms of the settlement agreement were fully set forth in the judgment order.

On June 19, 1986, Arnold presented a motion to vacate the property settlement portion of the judgment for dissolution and to withdraw proofs. An amended motion was offered on July 16, 1986. According to the motion the settlement had been predicated upon the trial brief submitted by petitioner which alleged assets of $698,602. Respondent charged that the sections of the judgment order he wished to have vacated were unconscionable, oppressive, and had been predicated upon a number of mistakes of fact and misrepresentations made by Rosemary. The motion also asserted that Rosemary had threatened Arnold with disclosure of information to the Internal Revenue Service and obstruction of his visitation rights if he refused to enter into the agreement. These threats supposedly were made after settlement negotiations broke down just before trial was to begin and out of hearing of the court and counsel.

The court allowed the filing of Arnold's amended motion, and Arnold's counsel requested an evidentiary hearing on the motion. The court denied that request and then denied the motion to vacate. In a later dialogue with counsel the court made it clear that it had denied both the original and amended motions to vacate as well as requests for evidentiary hearings relative to both motions. As a basis for denial, the judge explained that he had read the amended motion to vacate and noted that it was verified. He further said that he had considered the transcript of the prove-up and the history and chronology of the proceedings. In his words: "I have an excellent memory of the prove-up and what it took to get the parties to that stage and these proceedings and I denied an opportunity to conduct an evidentiary hearing on what is designated on the face of the pleading as an amended motion to vacate. It is verified." The judge recalled that he had heard Arnold testify as to his understanding of the terms of the agreement and that he had found that both Arnold and Rosemary were intelligent and that they understood the full scope of the agreement terms. In his discussion of the matter of attorney fees, the judge observed that he had always felt that Arnold was highly intelligent on financial affairs as well as day-to-day living. Finally, just prior to the conclusion of these proceedings, Arnold's counsel sought to clarify the basis for the court's denial of the motion to vacate. The judge unequivocally stated once again that he had read the transcript of the April 9 prove-up and that it correlated with his memory of what had occurred at the prove-up. This appeal followed.

■■ Arnold's first contention is that the trial court erred in denying his request for an evidentiary hearing on his motion to vacate. He argues that the alleged mistakes, misrepresentation, and duress involved in reaching the settlement agreement could be properly evaluated only through such a hearing. Our review of the record and the controlling law persuades us otherwise.

In *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88, a case very similar to the one at bar, plaintiff, like Arnold here, sought vacation of a judgment for dissolution which had been based on a settlement agreement. The parties in *Filko* had carried on negotiations for approximately two years on questions of property settlement, alimony, and support payments. On April 14, the day the cause came to trial, but prior to the actual start of trial proceedings, the parties, their attorneys, and the trial judge participated in nearly six hours of conferences which ultimately resulted in an agreement. Plaintiff and her attorney acquiesced in the terms of the agreement. The matter proceeded to prove-up, and all the provisions of the oral property settlement agreement were verified in testimony given by plaintiff in open court. On the day the decree was to be entered, plaintiff appeared with a new attorney, but the trial court refused to allow the substitution of attorneys as requested by plaintiff. Nevertheless, the new attorney objected to entry of the decree and was allowed to make an offer of proof of the matters asserted as a basis for objection. The court allowed counsel to make his record but would not permit the introduction of any testimony. The decree was entered, and plaintiff filed a motion to vacate. A hearing was held on the motion but no testimony was permitted. Plaintiff's counsel, however, made an offer of proof as to the allegations in the motion. The motion to vacate was denied.

On appeal the court addressed the fact that the trial court had taken no evidence on plaintiff's motion to vacate. The general thrust of the court's remarks is that it was not necessary to allow such evidence since the court was already aware of all the matters raised by the motion. The court reasoned that the offer of proof informed the court as to what testimony would be given by plaintiff's witnesses and that the trial judge was familiar with all the matters plaintiff wished to present in support of her motion. The court summarized as follows:

> "Most of the matters raised in the motion to vacate involved nothing new as to such issues. There was no showing of any newly discovered evidence and there was no showing that evidence which would have been presented could not have been obtained prior to the April 14 hearing. On such basis, the refusal of the court to vacate the decree was proper (*Van Dam v. Van*

*Dam* [(1981)], 21 Ill. 2d 212, 171 N.E.2d 594)." (*Filko v. Filko* (1970), 127 Ill. App. 2d 10, 23, 262 N.E.2d 88.)

In our opinion the facts of the case at bar demand the same result as that reached by the *Filko* court.

As a preliminary matter, we note that Arnold asserted in both his trial motion and his appellate brief that the settlement had been predicated upon the assets alleged in the trial brief submitted by Rosemary. Although both parties were to submit trial briefs pursuant to court order, and Rosemary has included what purports to be a copy of her trial brief as an appendix to her appellate brief, neither trial brief is included in the record on appeal and will not be considered here. As will be shown, however, the absence of trial briefs does not impede our review of Arnold's allegations of trial error.

Arnold first asserts that at the oral prove-up he "lost sight of the fact" that certain monies had already been distributed and that, accordingly, there was less money to distribute than he had anticipated. He argues that because of his oversight there will be nothing left in the estate after he makes a required payment to Rosemary. However, with few exceptions, every item on Arnold's list of disbursements was the subject of a court order and was, or should have been, well known, if not to Arnold then to his attorney. Those items reflecting money withdrawn from the estate without court orders had either been the subject of prior disagreements between the parties, as reflected in their motions, or had been documented by the sequestrator. Arnold's argument that he "lost sight" of payments made pursuant to court orders in a matter in which he was a party and was represented by counsel is, at the least, unpersuasive.

Arnold next contends that he discovered after the prove-up that funds in certain accounts had been counted twice and that the actual balance of monies on account was considerably lower than that reported by Rosemary. There is no merit to respondent's assertion that he "discovered" these discrepancies only after prove-up. First of all, while, according to Arnold, the settlement was based on Rosemary's trial brief, Arnold also had the opportunity to file such a brief. As noted above, the record shows a court order directing both parties to file briefs. Arnold could have set forth his own calculations of assets based on his own discovery. Surely, two years should have been sufficient time to determine the status of his bank accounts. Furthermore, the sequestrator's reports reflect extensive movement of funds by Arnold in and out of the Chapmans' various accounts at various institutions both before and after the complaint for dissolution was filed but prior to prove-up. Considerable investment activity by Arnold is

also indicated by the reports. Finally, Arnold established and operated his own successful business. Even the court commented that it thought respondent was highly intelligent with regard to financial affairs. Arnold's claim that he was not aware of the duplications of funds until after prove-up is not sufficient to warrant an evidentiary hearing on his motion to vacate.

Another basis for Arnold's insistence that an evidentiary hearing was needed is that he was made liable for more than his share of income tax because Rosemary misrepresented her income during settlement negotiations. However, Arnold's amended motion to vacate reflects that he made this allegation to the trial judge during the negotiations. According to the motion, on the basis of Rosemary's representation that she had no income, "notwithstanding respondent's claim to the contrary concerting [sic] the petitioner's receipt of more than twelve thousand dollars ($12,000.00) on a net basis," the trial court suggested that Arnold assume the entire tax liability. Thus, the trial court was aware of this dispute between the parties.

Arnold next argues that he agreed to settle only after Rosemary subjected him to duress in the form of threats of disclosure to the Internal Revenue Service and interference with his visitation rights. These threats, according to Arnold, were not known to the trial court when it denied his motion. However, the substance of the alleged threats was set forth in Arnold's motion. The trial judge left no doubt that he had included Arnold's allegations of duress in his consideration of the conditions under which the settlement agreement was made. The judge repeatedly stated that he had read Arnold's motion and repeatedly noted that the motion was verified, thus indicating that Arnold's allegations were given weight in its decision. There is no indication that Arnold would have offered testimony of anything more than what was already included in his motion. Under these circumstances we are not convinced that an evidentiary hearing was necessary to evaluate Arnold's charges.

In summary, Arnold's motion to vacate set forth the matters on which he would have presented evidence at a hearing. The trial judge was already familiar with most of these matters. The motion itself alerted the court as to any new allegations. The new matters were considered by the court. We conclude that, like the offer of proof in *Filko*, the verified motion in this case sufficiently informed the court of what testimony would be given by Arnold's witnesses so that it was not necessary for the court to hold an evidentiary hearing on the motion. Arnold made no showing of newly discovered evidence or that he could not have obtained the evidence he wished to present prior to the

prove-up. In these circumstances the trial court did not err in refusing Arnold's request for an evidentiary hearing. *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88.

The cases cited by respondent in support of his position do not change our opinion. Initially, we note that in his original brief respondent relied on a First District appeal which was disposed of pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23). Although respondent apologized in his reply brief for citing to the Rule 23 order, he then went on to attach the order to his brief as an exhibit, suggesting that we or petitioner's counsel might wish to consider the case for certain insights it might offer. It strikes us as quite contradictory, and highly improper, that respondent should apologize for use of a case which has no precedential value and may be invoked only for reasons not relevant here, and then turn right around and again offer the case for our consideration. Needless to say, the case will not be reviewed here.

Other cases cited by respondent, while far more appropriate, are still not persuasive even though, in each instance, the matter was remanded for an evidentiary hearing on a previously denied motion to vacate. In *In re Marriage of Giammerino* (1980), 81 Ill. App. 3d 998, 401 N.E.2d 1048, while the case was remanded for hearing, the court specifically noted that although petitioner's attorney had represented at the hearing that the parties had a written property agreement which would be signed by both parties, respondent had never signed that agreement. Moreover, there is nothing in the opinion to indicate that the trial court was aware, prior to entry of judgment, of the grounds asserted for vacation or that evidence of those grounds was available prior to judgment. Just the opposite is true in the case at bar.

Respondent in *In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427, 405 N.E.2d 507, successfully sought relief from a judgment for dissolution under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72, now codified at Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). However, the *Lorenzi* court found it apparent from both the petition for relief and answers thereto that the matters alleged in the petition were outside the record and thus could not be determined by the trial court on the basis of the record. The matter was remanded for hearing on the new and disputed factual issues. As we have explained above, the matters asserted in Arnold's motion in the instant case were either a matter of record and already before the trial judge or were adequately called to the court's attention by the verified motion. *Lorenzi* is clearly distinguishable from the instant case.

*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 474 N.E.2d 28, also cited by respondent, can offer little support since there was no

issue in that case of failure to hold an evidentiary hearing. While the court in *Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639, 374 N.E.2d 1016, did remand the case for a hearing even though one had never been requested, the plaintiff there, unlike Arnold, was a foreign national who testified at the prove-up through an interpreter. Neither she nor her counsel executed the divorce decree. The proceeding regarding her petition was disjointed, disrupted, and did not serve to inform the court. The opinion specifically notes that certain contentions in the petition to vacate had no foundation in the record. In contrast, in the case at bar there is no claim that Arnold and his attorney did not execute the settlement agreement. Nor can it be said that the trial court was inadequately informed regarding Arnold's contentions. Neither *Riedy* nor *Dendrinos* supports Arnold's position.

We turn now to Arnold's asseveration that his motion should have been granted because the property settlement agreement is unconscionable. He claims it is unconscionable because he entered into it under duress and it is economically unfair to him. Arnold's position is insupportable.

■■■ The law favors peaceful settlement of marital dissolution disputes. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 444, 161 N.E.2d 832; *In re Marriage of Maher* (1981), 95 Ill. App. 3d 1039, 1042, 420 N.E.2d 1144.) Terms of a marital property settlement agreement are binding on the court unless the agreement is found to be unconscionable. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313, 474 N.E.2d 28.) The determination of unconscionability in a divorce agreement requires consideration of the conditions under which the agreement was made and the economic circumstances of the parties resulting from the agreement. (*In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 972, 451 N.E.2d 915.) Whether a divorce decree should be modified rests within the discretion of the trial court, and the trial court's findings will be disturbed on appeal only when the evidence clearly so requires. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313, 474 N.E.2d 28.) Review of the record and the testimony in the case now before us convinces us that the trial court did not err in finding that the settlement agreement was not unconscionable.

■■ We examine first Arnold's contention that he settled only under duress sufficient to render the agreement unconscionable. Duress includes the oppression, undue influence, or taking undue advantage of the stress of another to the point where another is deprived of the exercise of free will. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 314, 474 N.E.2d 28; *Stavins v. Stavins* (1979), 70 Ill. App. 3d 622, 626, 388 N.E.2d 928.) Evidence of duress must be clear and convincing

before a court may set aside a marital settlement agreement on this basis. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 314, 474 N.E.2d 28; *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930, 428 N.E.2d 1005.) The indication in this case that Rosemary's threats had the effect of overriding Arnold's free will is far from convincing.

The Chapmans had been in court seeking a divorce for almost two years when the settlement agreement was finally reached. Both were represented by counsel throughout the proceedings. The record is replete with evidence of the hostility between the parties and of deliberate attempts by each to hinder, aggravate, and humiliate the other. We perceive no hint that either of these individuals was easily coerced by the other. Based on his previous conduct, we are inclined to think Arnold was not easily intimidated by anyone. The record reveals that he violated court orders several times, even to the point of fleeing the State on one occasion. If Arnold was not deterred by the power of the court, it is difficult to see how he could have been unnerved by his estranged wife. Moreover, if Rosemary's threats were sufficiently real to intimidate Arnold, she could have coerced him into settlement long before the day of the trial.

The trial judge himself participated in the last two days of settlement conferences in this case. Arnold had the opportunity to insure that the court was aware of Rosemary's threats before prove-up began. Instead of utilizing the opportunity, however, he failed even to inform his own counsel.

Finally, during the prove-up, Arnold testified that he understood the terms of settlement and that, although he was not satisfied with the agreement, he was willing to be bound by it because he wished to put the divorce behind him and start a new life. When asked directly by the trial judge, Arnold responded that if the court accepted the settlement he would be bound by its terms.

On the totality of this record it is not possible for us to say that evidence of duress is so clear and convincing that the property settlement should be set aside on grounds that it is unconscionable. *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 314, 474 N.E.2d 28.

Nor can we say that any economic inequality of the parties resulting from the agreement amounts to unconscionability, as Arnold asserts. To begin with, Arnold refers to economic inequality which he "discovered" only after he had agreed to it, despite having had many months and full opportunity to discover and evaluate the true extent of the marital estate. In addition, the inequality he cites resulted mostly from disbursements from the marital estate made pursuant to court orders. Several of those disbursements were made to Arnold or his

company. One disbursement on his list is money he himself withdrew. It is, at the very least, implausible for respondent to now argue that he did not realize those monies had been distributed. Finally, Arnold claims that inequality resulted from a misrepresentation by Rosemary regarding her income. However, although Arnold spoke up about this misrepresentation during negotiations, he offered no supporting evidence during prove-up.

In spite of everything Arnold knew about the estate, or, in the alternative, in spite of the information available to him, he nevertheless entered into the agreement and indicated that, even though he thought it was unfair, he would be bound by the terms of the agreement. There is no way Arnold can now claim that economic inequality resulted in unconscionability sufficient to justify vacation of the property settlement provisions of the judgment for dissolution. In the words of the court in *Guyton v. Guyton* (1959), 17 Ill. 2d 439, 445, 161 N.E.2d 832, where the court upheld a settlement agreement against a challenge of unfairness:

> "The question of fairness was determined here by the parties themselves. If error was made it was that of defendant or his counsel, not that of the chancellor. In the words of this court's opinion in *Smith v. Smith*, 334 Ill. 370, 379, 'The parties did not rely upon the equity powers of the court for the adjustment of their marital rights so far as property was concerned. They did what they had a legal right to do—adjusted those rights by mutual agreement. Like any other agreement upon full consideration, the parties are concluded by it in the absence of fraud.' "

A property settlement should not be set aside merely because one party has second thoughts. *In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 586, 469 N.E.2d 381.

The record of this case belies Arnold's claims. Neither his allegations of duress nor of post-judgment economic inequality are persuasive that the marital settlement was unconscionable or that the trial court should have vacated the property disposition provisions of the judgment for dissolution.

Accordingly, the order of the circuit court of Lake County denying respondent's motion to vacate is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.