*In re* MARRIAGE OF MARY ANN FLYNN, Petitioner-Appellant, and GEORGE FLYNN, Respondent-Appellee.

First District (4th Division)   No. 1—91—2101

Opinion filed July 16, 1992.

William J. Gerard, of Gerard & Gerard, of Chicago, for appellant on appeal only.

Davis, Friedman, Zavett, Kane & McRae, of Chicago (Muriel Kuhs, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

The circuit court of Cook County entered a judgment that dissolved the marriage of petitioner, Mary Ann Flynn, and respondent, George Flynn. Prior to the entry of judgment, Mary Ann petitioned the trial court to vacate a prove up hearing on an oral marital settlement agreement. The trial court denied Mary Ann's petition to vacate the prove up and incorporated the settlement agreement into the judgment.

Mary Ann appeals from the judgment and from the trial court's denial of her petition to vacate the prove up. She contends: (1) the settlement agreement is unconscionable, and (2) her trial counsel coerced her into settling the case.

We affirm the judgment of the trial court.

BACKGROUND

The record discloses the following pertinent facts. On August 17, 1989, Mary Ann petitioned the trial court to dissolve her marriage to George. At the time judgment was entered, Mary Ann was 66 years old and George was 54. The dissolution itself was uncontested. Rather, Mary Ann and George disagreed on the issues of asset distribution and maintenance.

Discovery occurred, which included depositions of both parties and extensive production of documents. The trial court held two pretrial conferences, in addition to the conference held on the day of trial. By the time of trial, Mary Ann had been represented by four attorneys in succession. Her fourth attorney and trial counsel was John Bickley.

On April 30, 1991, at approximately 10 a.m., Mary Ann and George, represented by their respective attorneys, appeared in the trial court ready for trial. However, both counsel informed the court that they continued to hope for a settlement. The attorneys asked for additional time to negotiate and the trial court recessed the case. The record indicates that the attorneys spent the day in negotiations, except for a break for lunch. However, the record is silent as to whether Mary Ann and George personally participated in the negotiations.

At approximately 3 p.m., both counsel advised the trial court that they had reached an oral marital settlement agreement. The court held a prove up hearing on the oral settlement. The attorneys questioned Mary Ann and George as to the fairness and voluntariness of the settlement. George readily assented to the settlement.

Mary Ann, during questioning by her attorney, Bickley, generally assented to the fairness and voluntariness of various components of

the settlement. When questioned on the issue of maintenance, Mary Ann testified that she understood that: she had a right to ask the trial court to consider maintenance; George was asking her to waive maintenance in exchange for a greater share of the marital assets; and if she waived maintenance, she was barred from asking any court for maintenance in the future.

When Bickley asked Mary Ann whether she was willing to waive maintenance, the following colloquy occurred:

"[Bickley:] Are you willing then to waive maintenance in return for a higher percentage of the proceeds to be acquired by the sale of the assets of this particular marital property?

[Mary Ann:] I'm just—I'm trying to do math in my head and I'm not that good at it.

So, I'm waiving maintenance for all time, no matter what happens to me or what my physical condition is?

[Bickley:] That's correct. Once you waive maintenance—

[Mary Ann:] For the sake of eight per cent being given to me as opposed to being given to my husband?

[Bickley:] You are in effect being given between eight and ten per cent more of the assets of this estate than you would be entitled to under the current law.

[Mary Ann:] Otherwise I get fifty per cent? Is that—

[Bickley:] You get fifty per cent.

[Mary Ann:] Yes."

The trial court then explained to Mary Ann that the marital assets would not necessarily be divided equally. Rather, the court would consider the reasonable opportunity of Mary Ann and George to accumulate future assets, and the amount of the marital assets that Mary Ann would require to live comfortably without maintenance. The following colloquy then occurred:

"[Bickley:] Well, the question that is presently pending before the Court, is do you understand now *** that if you waive maintenance today, you can never come before this Court or any other court and ask for an imposition of maintenance for you, do you understand that?

[Mary Ann:] Yes, I understand that. It's just such a big thing to understand to say yes, and say yes, and I agree, I'll do it. I'll never come back again, you know, no matter what my situation is.

[Bickley:] Well, that is why we are here in court, Mrs. Flynn.

[Mary Ann:] Yes.

[Bickley:] We are here to get a dissolution of marriage.

[Mary Ann:] Yes.

[Bickley:] And to reach an accord with respect to all of the property rights between the parties.

[Mary Ann:] All right.

[Bickley:] Do you understand that?

[Mary Ann:] I do understand that."

During questioning by George's attorney, Mary Ann again assented to the fairness, voluntariness, and conclusiveness of the settlement. The following colloquy subsequently occurred:

"[Kuhs:] Do you feel that this is a fair settlement of this case under the circumstances?

[Mary Ann:] A fair settlement? Is my answer going to determine anything that is going to happen here?

THE COURT: Do you feel that it is fair and equitable? Are you satisfied with it? Was there any force or coercion used upon you to enter into this agreement?

[Mary Ann:] No. It seems like the best we can do under the circumstances.

THE COURT: Under the circumstances do you feel that it is fair and equitable?

[Kuhs:] No one has threatened you or coerced you to sign this?

[Mary Ann:] No one has threatened me.

[Kuhs:] You are not under the influence of alcohol or any other medication or drugs today, are you?

[Mary Ann:] Nothing at all.

[Kuhs:] Thank you."

Lastly, at the close of the prove up hearing, the following colloquy occurred:

"[Mary Ann:] May I ask a question? Was the subject of my health brought up?

THE COURT: Well, I would assume it was brought up in the negotiations.

[Mary Ann:] Was it?

[Bickley:] Anything further?

[Kuhs:] Thank you, your Honor.

THE COURT: You're welcome. Good luck."

On May 16, 1991, 16 days after the prove up hearing on the oral settlement agreement, Mary Ann filed, *pro se*, a petition to vacate the prove up. She claimed that the settlement was unconscionable and

that Bickley coerced her into settling. On May 29, the trial court denied Mary Ann's petition to vacate.

On May 30, 1991, with the settlement agreement reduced to writing and incorporated into the judgment, the trial court entered the dissolution judgment. The court specifically found that the settlement was not unconscionable and that Mary Ann and George entered into the settlement freely and voluntarily. Mary Ann timely appeals from the judgment and from the trial court's denial of her petition to vacate the prove up.

OPINION

The applicable legal principles are quite settled. The law favors the peaceful settlement of marital disputes. Indeed, section 502 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 502) is intended to encourage parties to reach an amenable settlement of their rights. *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313, 474 N.E.2d 28, 30.

■ When a party seeks to vacate or modify a property settlement incorporated into a dissolution judgment, the settlement is presumed valid. A reviewing court may not reverse the trial court's judgment merely because different conclusions could be drawn from the evidence. Rather, the modification of a dissolution judgment rests in the sound discretion of the trial court; a reviewing court will not disturb the trial court's findings unless the evidence clearly requires. (*Riedy*, 130 Ill. App. 3d at 313, 474 N.E.2d at 30.) A reviewing court will set aside a settlement agreement only if it is shown that the agreement was procured through coercion, duress, or fraud, or if the reviewing court finds that the agreement is contrary to any rule of law, public policy, or morals (*In re Marriage of Morris* (1986), 147 Ill. App. 3d 380, 389, 497 N.E.2d 1173, 1178; *Riedy*, 130 Ill. App. 3d at 313, 474 N.E.2d at 30), or is unconscionable (Ill. Rev. Stat. 1989, ch. 40, par. 502(b)).

I

Mary Ann first claims that the settlement agreement is unconscionable. She argues that the settlement is unconscionable because: (A) it did not provide for maintenance, and (B) it is generally unfair and inequitable.

A

Mary Ann argues that the settlement was unconscionable because it did not provide for maintenance. Mary Ann claims that she is enti-

tled to "permanent maintenance on the basis of her being 67 years of age, unlikely employment potential and ill-health. George is 55 years of age and a gainfully employed professor of music who is quite capable of providing Mary Ann with support."

■ Section 504(a) of the Act provides that a court may grant maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. (Ill. Rev. Stat. 1989, ch. 40, par. 504(a).) The Act intends that post-marital support be accomplished through a just distribution of marital assets wherever possible, rather than maintenance. *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388; *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1131, 427 N.E.2d 1262, 1267; Ill. Ann. Stat., ch. 40, par. 504, Historical & Practice Notes, at 524 (Smith-Hurd 1980).

■ After carefully reviewing the record, we cannot accept Mary Ann's argument that the absence of maintenance, by itself, renders the settlement agreement unconscionable. The property distribution provides Mary Ann with a cash payment, proceeds from the sale of the real estate, several bank accounts, several certificates of deposit, an individual retirement account, and half of George's pension. According to Mary Ann's own calculations, she will receive, from her half of George's pension alone, a lifetime annual annuity income of approximately $8,400. We further note that, due to Mary Ann's age, she is able to begin immediately to withdraw the monthly annuity. The record shows that the marital assets apportioned to Mary Ann appear to generate income sufficient to meet her needs. See *In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 679-80, 545 N.E.2d 459, 469-70; *Smith*, 100 Ill. App. 3d at 1131, 427 N.E.2d at 1267.

### B

■ Mary Ann further argues that the settlement is unconscionable because it is generally unfair and inequitable. However, unfairness or inequality does not render a marital settlement agreement unconscionable. Rather, a settlement "is unconscionable when it is improvident, totally one-sided or oppressive." *Riedy*, 130 Ill. App. 3d at 317, 474 N.E.2d at 33.

■ Applying these principles to the case at bar, we conclude that the settlement was not unconscionable. Mary Ann essentially waived maintenance in exchange for a greater share (approximately 62%) of the marital assets. We cannot say that the settlement is improvident,

totally one-sided, or oppressive. We uphold the trial court's finding that the settlement agreement is not unconscionable.

## II

Mary Ann next contends her trial counsel coerced her into settling the case. As examples of this alleged coercion, Mary Ann refers to the several portions of the prove up hearing which we previously quoted.

■ Coercion or duress includes the imposition, oppression, undue influence, or the taking of undue advantage of the stress of another, whereby that person is deprived of the exercise of her free will. Further, stress is common in dissolution proceedings; stress alone does not coercion make. The burden of proving duress, by clear and convincing evidence, is on the person asserting it. *Riedy*, 130 Ill. App. 3d at 314, 474 N.E.2d at 30-31.

■ After carefully reviewing the record, we cannot say that the record contains evidence of coercion that is so clear and convincing that the settlement agreement should be set aside. This court has noted that "those cases in which evidence of coercion was found usually involved hastily contrived agreements occurring only hours before the hearing." (*Riedy*, 130 Ill. App. 3d at 314, 474 N.E.2d at 31.) However, the settlement in the present case was not by any means "hastily contrived." The settlement was the result of extensive discovery and several pretrial conferences.

Moreover, this case had been in the trial court for nearly two years when the settlement was finally reached. Mary Ann was represented by counsel throughout those proceedings. If Mary Ann's attorneys could have deprived her of the exercise of her free will, Mary Ann could have been coerced into settlement long before the day of trial. See *In re Marriage of Chapman* (1987), 162 Ill. App. 3d 308, 316-17, 515 N.E.2d 424, 430-31.

Lastly, the above-quoted portions of the prove up show that Mary Ann understood the terms and consequences of the settlement agreement. Mary Ann was not enthusiastic about that portion of the settlement which pertained to maintenance. However, she acknowledged that the agreement was "the best we can do under the circumstances." Mary Ann understood that she had the right to have a trial to determine asset distribution. She stated that no one had threatened her and that she was not under the influence of any medication or other substance.

Mary Ann, however, chose to settle her case rather than accept the uncertainty of a trial. The anxiety inherent in making this choice

does not, by itself, constitute coercion. (See *Morris*, 147 Ill. App. 3d at 392-93, 497 N.E.2d at 1179-80.) The fact that Mary Ann "has since changed her mind should not render the settlement invalid." (*Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 522, 386 N.E.2d 620, 622.) We uphold the trial court's finding that Mary Ann entered into the settlement agreement freely and voluntarily. See *Riedy*, 130 Ill. App. 3d at 314-15, 474 N.E.2d at 31.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.